Panel's Decision:

After due analysis, this Panel denies Leeward's motion requesting that AUA's counterclaim be dismissed for untimely filing.

VI.     CONTROVERSIES SUBMITTED TO THE PANEL FOR RESOLUTION:

A.   Claimant's (Leeward's) controversies submitted to arbitration:

1.   Controversy:

Whether the Contract is a fixed price contract subject to additions or deletions by change order or whether the Contract price is based upon measured works?

Panel's Decision:

The Panel rules that the Contract is a fixed price contract subject to additions and deletions. Leeward is entitled to receive compensation for work performed. Even though the Contract provides that additions and deletions should be made by formal change orders, from the evidence considered by the Panel it appears that both parties waived this requirement.

2.   Controversy:

Whether AUA breached the Contract with respect to the issuance of change orders, certificates of substantial completion, certificate of final completion, the review, certification, and payment of payment requisitions, the determination of claims, and the administration of the Contract?

Panel's Decision:

This Panel finds that both parties failed in their contractual responsibility to follow and enforce the General Conditions of the Contract AIA 201-1997. The respective liability of each party with respect to certain claims will be addressed in this Final Award.

6

3.    Controversy:

Whether AUA breached the Contract by failing to timely pay the amount due on payment requisitions?

Panel's Decision:

This Panel finds that AUA did breach the Contract on this matter.  In many instances AUA had concerns regarding the quantities invoiced, however, there were reasonable alternatives in case the parties did not reach an agreement to issue the partial payments, as stated in Article 9.5.1 of the Contract.  This Panel rules that holding the entire amount was far from reasonable and fair.

4.    Controversy:

If AUA breached the Contract by failing to timely pay the amount due on payment requisitions, is Leeward entitled to interest on the late payments at the legal rate under the laws of Antigua and if so, whether 10% per annum is the proper rate?

Panel's Decision:

This Panel finds that Leeward is entitled to interest on the payments due and unpaid as set forth under sections 7.2 and 13.6.1 of the Contract and General Conditions.  However, this Panel agrees with AUA in that the interest agreed upon by the parties was the "legal rate" and therefore interest shall be calculated at 7% per annum.

5.    Controversy:

If the Contract was for a fixed price, is Leeward entitled to payment for work that AUA omitted, deleted or modified from the Contract's original scope of work?

Panel's Decision:

No.  Leeward is only entitled to payment for work performed.  However, this Panel finds that Leeward is entitled to damages in the amount of EC $ 232,670.13 for work that was deleted

7

from the Contract and then assigned to Leeward under Separate Contracts, under the bad faith doctrine.

6. Controversy:

If the Contract price is based upon measured works, what adjustments should be made to the Contract sum for work omitted, deleted or modified from the Contract's original scope of work despite the AUA's failure and refusal to issue change orders?

Panel's Decision:

The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a decrease in the Contract Sum shall be the actual net cost.

7. Controversy:

If the Contract was based upon measured works, is Leeward entitled to overhead and/or profit for work omitted, deleted or modified from the Contract's original scope of work and if so, what amount is Leeward entitled to for overhead and/or profit on omitted, deleted or modified work?

Panel's Decision:

The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a decrease in the Contract Sum shall be the actual net cost. When both additions and credits covering related work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change, i.e., AIA Document A201-1997 General Conditions of the Contract for Construction, Section 7.3.7. Therefore, Leeward is entitled to overhead and profit for work omitted, deleted or modified as claimed, except for the $185,425.07 of overhead and profit for the Doors & Windows and Flooring works that were deleted from the Contract's original scope of work and then given to Leeward under a Separate Contract.

8

8.    Controversy:

What amount is Leeward entitled to for additions to the Contract that should have been added pursuant to change orders had AUA properly issued change orders on the Project?

Panel's Decision:

This Panel finds that Leeward is entitled to receive compensation for work performed, despite any formal change orders, based on Measured Work and the Bill of Quantities (BOQ).

9.    Controversy:

Whether AUA was responsible for project delays that impaired Leeward's ability to substantially complete the Contract work by the substantial completion dates in the Contract, as extended?

Panel's Decision:

After a careful study and analysis of the witness statements as well as the evidence presented, the Panel finds that both parties were equally responsible for the project delays. Leeward failed to reach substantial completion of the project in the time that was agreed upon.  The numerous delays and changes to the drawings and the fact that AUA had knowledge of Leeward's request for extension of time, draw us to determine equal responsibility for both parties regarding the delays in the substantial completion.

10.    Controversy:

If AUA is responsible for project delays that impaired Leeward's ability to complete the project by the substantial completion dates in the Contract as extended, then what amount is Leeward entitled to for additional preliminaries as a result of the AUA's actions?

Panel's Decision:

This Panel finds that both parties were equally responsible for the project delays. Consequently, we find AUA responsible for 50% of the Additional Preliminaries in the

9

amount of EC $477,777.04 and such amount is hereby granted in favor of Leeward.

11. Controversy:

Whether Leeward was responsible for the project delays that caused it to fail to substantially complete the work by the Contract's deadlines?

Panel's Decision:

No. Refer to Panel Decisions in *Section VI. (A-9) and (A-10)*, above.

12. Controversy:

If Leeward is responsible for the project delays that caused it to fail to substantially complete the work by the Contract's deadlines, what amount is due from Leeward to AUA for liquidated damages?

Panel's Decision:

Refer to Panel Decisions in *Section VI. (A- 9), (A-10) and (B-36)*, above.

13. Controversy:

Whether Leeward substantially complied with the notice of claim provision in the Contract?

Panel's Decision:

By reason of the conduct of the parties during the development, construction and liquidation of the Project, the Panel concludes that the time limit for the notice of claims stipulated in Section 4.3.2 of the General Conditions was waived, as well as Section 4.6.3 of the General Conditions referring to the initiation of an arbitration process. This decision is applicable to both parties.

14. Controversy:

If Leeward did not substantially comply with the notice of claim provision in the Contract, whether AUA waived compliance with such provision?

Panel's Decision:

See Panel's Decision of Controversy in *Section VI. (A-13)*, above.

10

15.   Controversy:

Whether AUA substantially complied with the notice of claim provision in the Contract?

   Panel's Decision:

See Panel Decisions in **Section VI. (A-14) and (A-15),** above.

16.   Controversy:

Whether Leeward is entitled to pre-judgment interest on its damages as a result of the AUA's breach of the Contract?

   Panel's Decision:

This Panel is awarding pre-judgment interest to Leeward from October 31, 2009, as detailed in the Award, at the rate of 7% per annum.

17.   Controversy:

If Leeward is entitled to pre-judgment interest on its damages, is 10% per annum the appropriate rate of interest to be charged under the laws of Antigua and if so, from what date should the interest begin to run?

   Panel's Decision:

Yes. But see Panel's Decision to Controversy 16, above.

18.   Controversy:

Whether Leeward is entitled to payment in the amount of US $30,743.20/EC $83,000.00 for the AUA's acknowledged error in the calculation of ABST payments?

   Panel's Decision:

This Panel finds that the ABST error was mutually acknowledged by both parties, and not having been originally claimed and submitted as a controversy in this Arbitration and having been discovered and in good faith informed by AUA representatives during the Hearings,

11

the Panel concludes that this claim should be corrected outside of the context of this Arbitration.

19.  Controversy:

If Leeward is not entitled to any other damages in this proceeding, whether Leeward is entitled to the payment of US $218,566.74/EC $590,083.00 in retainage?

    Panel's Decision:

After careful consideration regarding the works that were deleted from the Contract and then assigned to Leeward under Separate Contracts, this Panel finds that Leeward is entitled to damages under the bad faith doctrine.  Therefore, this Panel grants Leeward damages in an amount equal to EC $232,670.13.  As per Leeward's claim for retainage, *refer to the Panel's Decision in section VI. (B-29), infra.*

20.  Controversy:

If AUA breached the Contract, is Leeward entitled to damages as specified in Claimant's Proposed Findings of Fact and Conclusions of Law Paragraphs 130, 131, or 133 or some other amount?

    Panel's Decision:

The Panel finds that both parties breached the Contract and therefore, in some instances share direct responsibility for same.  As such, this Panel will not grant damages to Leeward as requested, but as specifically provided in the Award on page 31.

21.  Controversy:

Whether the additional works contracts Leeward entered into with AUA are subject to arbitration?

    Panel's Decision:

The Panel finds that the additional works contracts are not subject to this Arbitration.

22. Controversy:

If the additional works contracts are subject to arbitration, then what is the amount due from AUA to Leeward for the unpaid balances on the additional works contracts?

Panel's Decision:

The Panel finds that the Separate Contracts Leeward entered into with AUA are not subject to this Arbitration.

23. Controversy:

Whether the arbitration was commenced within a reasonable time not to exceed the statute of limitations for breach of contract actions under the laws of Antigua?

Panel's Decision:

The Panel finds that this Arbitration was commenced timely.

24. Controversy:

What is the statute of limitations for breach of contract actions under the laws of Antigua?

Panel's Decision:

The Panel finds that this Arbitration was commenced within the six (6) year term.

25. Controversy:

Whether the Panel should strike the AUA's witness statement of Peter McLeod on the grounds that Mr. McLeod's witness statement constitutes an expert opinion that AUA failed to disclose until the eve of the hearing after representing to the Panel during a telephone conference on December 15, 2011 that it did not foresee the use of expert witness testimony?

Panel's Decision:

This Panel finds that Peter McLeod's testimony is not that of an expert witness. Therefore, all parts of his witness statement and testimony rendered based on his opinion as an expert are stricken from the record. However, this Panel considered as factual the testimony

13

offered by Peter McLeod which relates to his personal knowledge and intervention in the negotiation of the Contract Documents, and will give it the probatory value it deems appropriate.

26.  Controversy:

Whether Leeward is entitled to attorneys' fees, arbitration fees, expenses and compensation as provided under the laws of Antigua or otherwise?

   Panel's Decision:

Considering that both parties shared responsibility regarding some of the controversies submitted and in the management of the Contract, the Panel finds no compelling reason to grant attorney's fees, arbitration fees, expenses and compensation as provided under the laws of Antigua or otherwise.  Each party shall bear their own attorneys' fees, arbitration expenses and such the like.

B.   RESPONDENTS (AUA'S) CONTROVERSIES SUBMITTED TO ARBITRATION:

1.   Controversy:

Is Leeward barred from seeking to be paid EC $1,604,617 for work it did not perform as a result of design changes and site conditions (like the chain link fence) (the "Omitted Work") because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a Claim throughout the course of construction and no later than October 2009, but initiated it no sooner than December 17, 2010 - 14 months later?

   Panel's Decision:

The Panel finds that Leeward is barred from seeking to be paid for work it did not perform, not because it failed to initiate a claim, but because the evidence received and considered by the Panel is that the Contract was a fixed sum contract subject to additions and deductions, and Leeward would be paid for work it actually performed, based on the BOQ.

14

In regards to the "timeliness" of Leeward's claim, it is the determination of the Panel that both parties breached various provisions of the Contract and are, therefore, barred from enforcing said provisions against each other.

2.   Controversy:

Even if Leeward had initiated a claim timely, is Leeward entitled to be paid for the Omitted Work on the ground that AUA did no document changes in the scope of Leeward's work by issuing formal change orders in the manner provided by Section 7 of the General Conditions, or did the parties waive the formal change order procedure by implementing another method, i.e., the monthly requisition process, to document additions and deductions to the Contract Sum, as evidenced by the parties' course of conduct throughout the duration of the Project?

   Panel's Decision:

*See Panel's Decision to Controversy 1, supra.*

3.   Controversy:

Is Leeward barred from pursuing its new alternative claim that it be paid overhead and profit on the Omitted Work for one or more of the following separate reasons:

   a)   Because Leeward asserted its new alternative claim for the first time in its post-trail submission, in violation of Section R-6(b) of the AAA's CIAR, thereby depriving AUA of a fair opportunity to proffer a defense? Or

   b)   Because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim throughout the course of the construction and no later than October 2009, but never initiated a claim and raised the issue for the first time in Leeward's April 2012 Proposed Findings of Facts and Conclusion of Law? Or

   c)   Because the new claim was not asserted in Leeward's February 3, 2011 Demand for Arbitration or its October 14, 2011 Amended Demand for Arbitration, but instead raised for the first time on April 20, 2012, in violation of Section 4.6.5 of the General Conditions, which provides that the "party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded"?

15

Panel's Decision:

This Panel will not exclude any claim under the sole contention of timeliness. Therefore, Leeward is not barred from pursuing its claim for the payment of overhead and profit on the Omitted Work.

4.    Controversy:

Even if Leeward had initiated its new alternative claim for overhead and profit on the Omitted Work timely in accordance with the Contract Documents and the CIAR, is Leeward entitled to be paid overhead and profit on the Omitted Work given the testimony that the parties intended to use the Bills of Quantities to value changes to the scope of the work necessitated by design changes and site conditions, and given that Leeward never sought to be paid its overhead and profit Omitted Work?

Panel's Decision:

Yes. This Panel finds that Leeward is entitled to overhead and profit for work omitted, deleted or modified, except for the $185,425.07 of overhead and profit for the Doors & Windows and Flooring works that were deleted from the Contract's original scope of work and then given to Leeward under a Separate Contract.

5.    Controversy:

Is Leeward barred from seeking to be paid for the Flooring Work that AUA deleted from Leeward's scope of work because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward admits it was aware of the facts giving rise to such a claim no later than April 21, 2009, but initiated a claim no sooner than December 17, 2010 – 20 months later?

Panel's Decision:

The Panel finds that both parties were at fault with their mutual responsibilities in following and enforcing the General Conditions of the Contract, therefore, this Panel will not exclude

16

A103

Case 13-1708, Document 92-2, 02/20/2015, 1442819, Page12 of 94

any claim under the sole contention of timeliness. The evidence also showed that Leeward in many instances notified AUA of its claims, even though it was not in the manner set forth in the Contract. Therefore, the Panel finds that Leeward is entitled to receive compensation for work performed; however, with regard to the Flooring Work, which is part of the Separate Contracts, same is not subject to this Arbitration.

6. Controversy:

Even if Leeward had initiated a claim timely, is Leeward entitled to be paid for the Flooring Work that AUA deleted from Leeward's scope of work on the ground that AUA did not document the deletion of this work by issuing formal change orders in the manner provided by Section 7 of the General Conditions, or did the parties waive the formal change order procedure by implementing another method, i.e., the monthly requisition process, to document additions and deductions to the Contract Sum, as evidenced by the parties' course of conduct throughout the duration of the Project?

Panel's Decision:

The Panel finds that the Separate Contracts are not subject to this Arbitration. Therefore, this Panel will not grant remedies for the Flooring Work.

7. Controversy:

Is Leeward barred from pursuing its new alternative claim that it be paid overhead and profit on the Flooring Work (EC: $1,741,032 * 18% = EC $313,385.76) for one or more of the following separate reasons:

a) Because Leeward asserted this new alternative claim for the first time in its post-trial submissions, in violation of CIAR R-6(b), thereby depriving AUA of a fair opportunity to proffer a defense? Or

b) Because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim on April 21, 2009 and no later than October 2009, but never initiated a claim and raised the issue for the first time in Leeward's April 20, 2012 Proposed Findings of Fact and Conclusions of Law? Or

17

c)  Because the new alternative claim was not asserted in Leeward's February 3, 2011 Demand for Arbitration or its October 14, 2011 Amended Demand for Arbitration, but instead raised for the first time on April 20, 2012, in violation of Section 4.6.5 of the General Conditions, which provides that the "party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded"?

Panel's Decision:

The Panel finds that each party is barred from alleging non-compliance against each other regarding the terms of the Contract under the sole contention of timeliness and, therefore, will consider all claims brought without regard to timeliness. However, this Panel finds that Leeward is entitled to overhead and profit for work omitted, deleted or modified, but not for the Flooring Work, which was given to Leeward under a Separate Contract.

8.   Controversy:

Even if Leeward had initiated its alternative claim for overhead and profit on the Flooring Work timely under the Contract Documents and the CIAR, is Leeward entitled to be paid EC $313,385.76 in overhead and profit on the Flooring Work given that Leeward entered into a separate contract with AUA on July, 2009 to perform this work, and was paid under the terms of that separate contract?

Panel's Decision:

No. *Refer to Panel's Decision in Section VI. (B-7), above.*

9.   Controversy:

There is no decision to render with respect to the Modified Work Delta of negative EC $14,294.10. Leeward is not seeking to recover any money reflected in this delta, which reflects that Leeward was paid more by seeking payment for work "as built" and in accordance with the "final measure" that it would have received had it been paid based upon the measurements in the initial Bills of Quantities.

18

A105

Panel's Decision:

This Panel finds that Controversy number 9, as stated by AUA, does not require the Panel's decision for it does not constitute a claim. In the alternative, the Panel finds the claim to be inadmissible and therefore, dismissed and denied.

10. Controversy:

Is Leeward barred from pursuing its May 11, 2009 Claim for an Extension of Time and the accompanying Additional Preliminaries in the amount of EC $955,554.08 (the difference between the EC $5,891,857.68 in Preliminaries sought by Leeward and the EC $4,936,303.60 approved and paid by AUA) because it failed to initiate the claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward admits that it was aware on January, 2009 that it was not going to complete its work within the Contract Time?

Panel's Decision:

No. Although this Panel finds that both parties were not in strict compliance with the Contract and Contract documents, Leeward is not barred from its claim regarding the responsibility for delays and substantial completion. Consequently, this Panel finds AUA responsible for 50% of the Additional Preliminaries amounting to EC $477,777.04 and such amount is hereby granted in favor of Leeward.

11. Controversy:

Is Leeward barred from pursuing its Claim for an Extension of Time and the accompanying Additional Preliminaries in the amount of EC $955,554.08 because it failed to commence arbitration within a reasonable amount of time after its accrual in accordance with Section 4.6.3 of the General Conditions, given that the Claim accrued in January 2009 and Leeward waited until February 3, 2011 – 25 months later – to commence arbitration?

19

Panel's Decision:

No. *Refer to Panel's' Decision in Controversy number 10, above, where the controversy relative to the Additional Preliminaries is resolved.*

12.   Controversy:

Even if Leeward had initiated its Claim for Additional Preliminaries timely and commenced arbitration in a reasonable amount of time, is Leeward entitled to Additional Preliminaries based upon the ground asserted in its May 11, 2009 Claim, *i.e.*, that it had been denied access to a $500,000.00 (EC $1,350,000.02) set aside for Non-Productive Overtime, given the absence of any evidence that such an account was agreed to by the parties or that the alleged lack of access to overtime impacted the critical path and caused the damages asserted?

Panel's Decision:

Yes. *Refer to the Panel's Decision in Controversy number 10, above.*

13.   Controversy:

Aside from the Claim for Additional Preliminaries based on the alleged denial of Non-Productive Overtime initiated on May 11, 2009, did Leeward timely initiate any other claims for an extension of the Contract Time or an increase in the Contract Sum for the Additional Preliminaries in accordance with Section 4.3 of the General Conditions based on any other alleged theory of delay?

Panel's Decision:

This Panel finds that each party is barred from alleging non-compliance with the terms of the Contract and, therefore, will consider all claims brought without regards to timeliness. AUA shall refer to the Award as to claims granted, on pages 31-32.

20

14.     Controversy:

If so, did Leeward establish that each such claim for delay satisfied each of the following elements: (a) caused by AUA; (b) impacted the critical path; and (c) resulted in a specific loss of time or amount of damages?

Panel's Decision:

After a careful study and analysis of the witness statements as well as the evidence presented, the Panel finds that both parties were responsible for the project delays. Leeward failed to reach substantial completion of the project in the time that was agreed upon. However, the numerous delays and changes to the drawings and the fact that AUA had knowledge of Leeward's request for extension of time, draw us to determine equal fault for each party regarding the delays in the substantial completion. Moreover, AUA shall refer to the Award on pages 31-32, as to the claims granted.

15.     Controversy:

Is Leeward barred from seeking to be paid EC $190,210.19 more than the EC $1,232,008.91 it was already paid for additional work it documented as "Change Orders" in the monthly payment applications because Leeward failed to initiate a Claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim no later than October 26, 2009, but initiated a Claim no sooner than December 17, 2010 -- 14 months later?

Panel's Decision:

The Panel finds that Leeward is entitled to payment for all work performed under the Contract subject to this Arbitration, without consideration to the timeliness of the claims.

16.     Controversy:

Even if Leeward had timely initiated a claim to be paid an additional EC $190,210.19 for Change Order work, is Leeward entitled to be paid this money given that Leeward did not

21

make a demand for payment contemporaneous with the payment of its Draft Final Account and given that Leeward did not otherwise submit evidence to substantiate its right to payment?

  Panel's Decision:

From the evidence presented at trial, the Panel finds that Leeward is entitled to the additional EC $190,210.19. Consequently, the Panel grants Leeward's claim for EC $190,210.19.

17.    Controversy:

Is Leeward barred from pursuing its claim to recover EC $19,475.40 for the Whitsuntide Holiday because it failed to commence arbitration within a reasonable amount of time after its accrual in accordance with Section 4.6.3 of the General Conditions, given that the claim accrued on June 1, 2009 and Leeward waited until February 3, 2011 – 21 months later – to commence arbitration?

  Panel's Decision:

The Panel finds that Leeward is not barred from any of its claims based on timeliness. However, claims pertaining to delays in the completion of the Project are subject to the Panel Decisions in *Section VI. (B-14) and (B-15), above.*

18.    Controversy:

Even if Leeward had commenced arbitration in a reasonable amount of time, is Leeward entitled to EC $19,475.40 in damages for closing the construction site on June 1, 2009 for the Whitsuntide Holiday given that the holiday occurred after the May 14, 2009 deadline for Leeward to complete its work under the Contract Documents?

  Panel's Decision:

No. Refer to the Panel's Decision in *Section VI. (B-14), above.*

19.   Controversy:

Is Leeward barred from seeking payment for an additional EC $162,372.12 in "claims" out of the EC $181,847.52 sought in the Amended Demand for Arbitration because Leeward failed to initiate a Claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim no later than October 26, 2009, but initiated a Claim no sooner than December 17, 2010 -- 14 months later?

Panel's Decision:

This Panel finds that each party is barred from alleging non-compliance with the terms of the Contract and therefore, will consider all claims brought without regards to timeliness, except those that were specifically distinguished by the Panel's legal reasoning in each of the controversies submitted for resolution in the Award on page 31.

20.   Controversy:

Even if Leeward had timely initiated a claim, is Leeward entitled to recover an additional EC $162,372.12 in "claims" given that Leeward was already paid that precise amount, EC $162,372.12, for these identical "claims," as confirmed by the Draft Final Account submitted by Leeward, certified by the Architect, and paid by AUA?

Panel's Decision:

This Panel finds that Leeward was rightfully paid for extra work, and for the "claims" (adverse weather and holiday) for a total of EC $1,232,008.91 in Change Orders and EC $162,372.12 in 'Claims' paid in the Draft Final Account.

21.   Controversy:

Is Leeward barred from seeking EC $1,000,000 allegedly due and owing from the Cash Allowance portion of the Contract Sum because Leeward failed to initiate a Claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that

23

Leeward was aware of the facts giving rise to such a claim no later than October 26, 2009, but initiated a claim no sooner than December 17, 2010 – 14 months later?

Panel's Decision:

This Panel finds that each party is barred from alleging non-compliance with the terms of the Contract and therefore, will consider all claims brought without regards to timeliness, except those that were specifically distinguished by the Panel's legal reasoning in each of the controversies submitted for resolution in this Award.

22.   Controversy:

Even if Leeward had timely initiated such a claim, is Leeward entitled to recover EC $1,000,000 from the Cash Allowance component of the initial Contract Sum for contingent costs, including craneage, scaffolding and overtime, given that the EC $2,262,166.51 that Leeward billed for and received for such contingent costs includes the EC $1,000,000 allocated to contingent costs in the EC $27,436,824 Contract Sum, which Leeward uses as costs?

Panel's Decision:

This Panel finds that Leeward is not entitled to its claim for Cash Allowance because the evidence received and considered demonstrated to the Panel that, Leeward was paid EC $2,262,166.51 in Cash Allowance, with included the EC $1,000,000.00 claim.

23.   Controversy:

Is Leeward barred from pursuing to recover overhead and profit on the EC $191,090 in Doors and Windows Work deleted by AUA from Leeward's scope of work because it failed to commence arbitration within a reasonable amount of time after its accrual in accordance with Section 4.6.3 of the General Conditions, given that the claim accrued on April 21, 2009 and Leeward waited until February 3, 2011 – 22 months later – to commence arbitration?

24

Panel's Decision:

This Panel finds that Leeward is barred from pursuing the overhead and profit on the EC $191,090 in Doors and Windows Work deleted by AUA because such work was then given to Leeward under a Separate Contract and, therefore, is not subject to this Arbitration. Refer to the Panel's Decision in Section *V. (2)*.

24.   Controversy:

Even if Leeward had commenced arbitration in a reasonable amount of time on its claim for overhead and profit on the Doors and Windows Work, is Leeward entitled to recover EC $34,396.20 as and for its overhead and profit on this work given that the unit rates contained in the initial Bills of Quantities were "provisional sum rates" and given that Leeward entered into a separate contract with AUA in July 2009 to perform this work?

Panel's Decision:

No.  *Refer to Panel's Decision in Controversy number 23, above.*

25.   Controversy:

Is Leeward barred from pursuing its claim to recover overhead and profit on the EC $1,735,589 in Painting Work deleted by AUA from Leeward's scope of work because Leeward failed to commence arbitration within a reasonable amount of time after its accrual in accordance with Section 4.6.3 of the General Conditions, given that the claim accrued on April 21, 2009 and Leeward waited until February 3, 2011 – 22 months later – to commence arbitration?

Panel's Decision:

The Panel finds that each party is barred from alleging non-compliance with the terms of the Contract and, therefore, will consider all claims brought without regards to timeliness, except those that were specifically distinguished by the Panel's legal reasoning in each of the controversies submitted for resolution in this Final Award.

25

26.   Controversy:

Even if Leeward had commenced arbitration in a reasonable amount of time on its claim for overhead and profit on the Painting Work, is Leeward entitled to recover EC $312,406.02 as and for its overhead and profit on this work given that Leeward would have incurred more in liquidated damages had the Painting Work not been removed from Leeward's scope of work than it seeks to recover in overhead and profit for this work?

   Panel's Decision:

Yes.  *Refer to the Panel's Decision in Section VI. (A-7),*

27.   Controversy:

Is Leeward barred from seeking to recover monies allegedly due and owing under the Separate Contracts in the arbitration for either of the following separate reasons:

   a)  Claims under the Separate Contracts are not arbitrable because AUA did not agree to arbitrate them; Or

   b)  In the event Leeward's payment claims under the Separate Contracts fall within the scope of the arbitration provision (Section 4.6.1 of the General Conditions), because Leeward failed to initiate any claims within 21 days of their accrual in accordance with Section 4.3 of the General Conditions.

   Panel's Decision:

Yes.  This Panel finds in favor of AUA in that works that were performed under Separate Contracts are not subject to this Arbitration

28.   Controversy:

Even if Leeward's claims under the Separate Contracts are subject to arbitration, and even if Leeward had initiated claims timely, has Leeward established that AUA only paid Leeward EC $1,359,035.40, in the aggregate, on the Separate Contracts and owes it an additional EC $202,943 on these contracts based upon the proposed contract amounts, particularly considering the evidence presented by AUA that Leeward was to be paid as per actual work (not the proposed amounts), and that Leeward was paid EC $1,452,261.32 for that work?

26

Case 13-1708, Document 92-2, 02/20/2015, 1442819, Page22 of 94

Panel's Decision:

No.  *See Panel Decisions in Section VI. (A-7 and (B-2).*

29.    Controversy:

Is Leeward entitled to an award for the EC $590,083 that AUA holds as retainage given that Leeward has not provided evidence that it satisfied its obligations under Section 9.10.2 of the General Conditions to provide "an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered have been paid or otherwise satisfied."?

Panel's Decision:

This Panel finds that the only issue regarding the retainage is the submittance by Leeward to AUA of the required documents.  Therefore, this Panel hereby Orders Leeward to comply with Section 9.10.02 of the General Conditions, as applicable to the particular Project within the term provided in the Award on pages 31-32 and, thereafter, AUA must pay the remaining 2.5% of the Contract Sum equal to EC $590,083.00, without interest, if paid within the time allowed.

30.    Controversy:

Should the mutual accounting mistake discovered by AUA on the eve of trial that resulted in Leeward receiving EC $83,059.56 less than was reflected in the Draft Final Account be part of any arbitration award, and potentially subject to the assessment of interest, given that Leeward never notified AUA of the error, or specifically demanded payment, or asserted any claim to recover this amount?

27

Panel's Decision:

This Panel determines that the ABST error was mutually acknowledged by both parties, and not having it been submitted as a controversy of this Arbitration and having it been discovered and in good faith informed by an AUA representative during the hearings, we conclude that this issue should be resolved outside of the context of this Arbitration.

31.   Controversy:

Is Leeward entitled to an award of interest for any portion of Leeward's EC $6,701,390.33 demand? If so, when should interest begin to run given Leeward's long delay in commencing arbitration on the three claims it actually initiated during the Project (*i.e.*, Additional Preliminaries, Whitsuntide Holiday and Overhead and Profit on the Painting Work and Doors and Windows Work) and given Leeward's failure to identify the remainder of its claims until filing its Amended Demand for Arbitration dated October 14, 2011?

Panel's Decision:

This Panel finds that Leeward is entitled to the claims recognized in this Award as herein stated. These claims shall accrue interest at the rate of 7% per annum, since the date of termination of the Project, October 31, 2009, as determined by the Panel; except for those claims that are specifically without interest.

32.   Controversy:

Did Leeward establish that AUA failed to pay one or more monthly payment applications timely, and if so, then what is the date of each such late payments and is Leeward entitled to an award of interest on any alleged late payments?

Panel's Decision:

Yes. *See Panel's Decision in Controversy (A-3) in Section VI.*

28

Case 13-1708, Document 92-2, 02/20/2015, 1442819, Page24 of 94

33.   Controversy:

Is Leeward entitled to an award of interest on any allegedly late mobilization payments, or were its claims with respect to this issue settled in January 2009 as set forth in AUA Ex. 67 at AUA 003269?

Panel's Decision:

The Panel finds that the disputes regarding mobilization were resolved with a payment by AUA in December 22, 2009 and a settlement was reached by the parties in January 13, 2009.

34.   Controversy:

To the extent Leeward is awarded any interest, should the rate of interest equal the statutory judgment rate in Antigua of 5%, given that the Contract Documents refer to the "legal rate" in Antigua?

Panel's Decision:

The Panel finds that Leeward is entitled to interest on the payments due and unpaid as set forth under Section 13.6.1 of the Contract and General Conditions as of October 3, 2009. However, this Panel finds that the interest shall be calculated at 7% per annum.

35.   Controversy:

Is Leeward entitled to recover any of its legal fees and expenses in prosecuting its claims or in defending AUA's counterclaim for Liquidated Damages?

Panel's Decision:

Upon careful consideration and considering that both parties were equally at fault (Leeward 50%- AUA 50%) regarding some of the controversies submitted and in the management of the Contract, the Panel finds no compelling reason to grant attorney's fees, arbitration fees, expenses and compensation as provided under the laws of Antigua or otherwise.  Each party shall bear their own attorneys' fees, arbitration expenses and such the like.

29

36.   Controversy:

Is AUA entitled to an award of Liquidated Damages in the amount of US $117,000.00 based upon Leeward's failure to achieve Substantial Completion within the Contract Time, but instead doing so 78 days later?

Panel's Decision:

After a careful analysis and evaluation of the witness statements as well as the evidence presented to the Panel, we find that both parties shared responsibilities for the project delays and, consequently, Leeward is responsible for 50% of the Liquidated Damages in the amount of EC $ 157,950.00[2], and such amount is hereby granted in favor of AUA.

37.   Controversy:

Is AUA entitled to setoff Liquidated Damages from the retainage it currently holds?

Panel's Decision:

No.   The Panel finds neither spurious allegations in Leeward's claims, nor intentional wrongdoing to award damages to AUA.   Consequently, AUA is denied its claim to setoff Liquidated Damages.

38.   Controversy:

Is AUA entitled to recover any of its legal fees and expenses in defending the claims asserted by Leeward and in prosecuting its counterclaim for Liquidated Damages?

Panel's Decision:

Upon careful consideration and considering that both parties were at fault regarding some of the controversies submitted and in the management of the Contract, the Panel finds no compelling reason to grant attorney's fees, arbitration fees, expenses and compensation as

---

[2] As per AUA's counterclaim for Liquidated Damages, the amount was expressed in US dollars and not EC dollars, therefore, considering the current currency conversion, said amount was calculated at $315,900.00 of which 50% is granted to AUA for $157,950.00.

30

provided under the laws of Antigua or otherwise. Each party shall bear their own attorneys' fees, arbitration expenses and such the like.

## AWARD

Accordingly, we ORDER and AWARD as follows:

1. Within thirty (30) days from the date of issuance of this Final Award Respondent AUA shall pay to Claimant Leeward the following amounts:

| a) Interest on the Payments Due and Unpaid | EC $44,617.37 | This sum shall accrue interest of 7% per annum from the date of issuance of termination of the Project, October 31, 2009. |
|---|---|---|
| b) Damages | EC $232,670.13 | This sum shall accrue interest of 7% per annum from the date of issuance of this Final Award. |
| c) Overhead and Profit for work deleted, omitted or modified | EC $802,399.25 | This sum shall accrue interest of 7% per annum from the date of termination of the Project, October 31, 2009 |
| d) Additional Preliminaries | EC $477,777.04 | This sum shall accrue interest of 7% per annum from the date of termination of the Project, October 31, 2009 |
| e) Change Order Work | EC $190,210.19 | This sum shall accrue interest of 7% per annum from the date of termination of the Project, October 31, 2009 |
| f) Retainage | EC $218,566.74 | This sum shall not accrue any interest. Leeward shall submit to AUA all contractually required documentation as set forth in Section 9.10.2 of the General Conditions. Leeward will have a term of not more than 30 calendar days from the date of issuance of this Final Award to submit said documentation. Once Leeward has submitted all required documentation accordingly, AUA shall release the retainage in a term not to exceed 30 calendar days, upon after which such amount shall start accruing interest at the rate of 7% per annum. If Leeward fails to comply with Section 9.10.2, of the General Conditions in the time hereby stated and granted the claim for such amount will be considered |

31

relinquished. Considering that this case is sub-judice, the herein referred notice may be made by counsel for Leeward to counsel for AUA, or by Leeward to AUA.

2. As per AUA's counterclaim for Liquidated Damages, this Panel grants 50% of such in the amount of EC $157,950.00, which will accrue interest at the rate of 7% per annum from the date of this Final Award.

3. The administrative fees and expenses of the International Centre for Dispute Resolution (ICDR) totaling $17,550.00 shall be borne by the parties as incurred. The compensation and expenses of the Panel totaling $151,992.75 shall be borne by the parties as incurred.

4. The terms of this Final Award shall be complied within thirty (30) days from the date of this Final Award.

This Final Award is in full settlement of all claims and counterclaims submitted to this Arbitration.

This Final Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

Per the arbitration clause, the location of the arbitration is Antigua; however, the parties jointly agreed for the Hearings to be held in Isla Verde, Puerto Rico. We hereby certify that, for the purposes of Article 1 of the New York Convention of 1957, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in Isla Verde, Puerto Rico, on this 22 day of June, 2012.

32

A119

Case 13-1708, Document 92-2, 02/20/2015, 1442819, Page28 of 94

June 20, 2012
Date

Jorge R. Jiménez, Esq.
Panel Chairman

June 22, 2012
Date

Héctor M. Varela, P.E.
Arbitrator

June 22, 2012
Date

José R. Capó, Esq.
Arbitrator

State of Puerto Rico
County of San Juan

On this 22 day of June, 2012 before me personally came and appeared Jorge R. Jiménez, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledge to me that he executed the same.

June 22, 2012
Dated

Notary Public
Affidavit # 286

State of Puerto Rico
County of San Juan

On this 22 day of June, 2012 before me personally came and appeared Héctor M. Varela, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledge to me that he executed the same.

June 22, 2012
Dated

Notary Public
Affidavit # 287

State of Puerto Rico
County of San Juan

On this 22 day of June, 2012 before me personally came and appeared José R. Capó, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledge to me that he executed the same.

June 22, 2012
Dated

Notary Public
Affidavit # 288

A120

Exhibit C

## INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| **LEEWARD CONSTRUCTION COMPANY, LTD.,**<br><br>Claimant,<br><br>vs.<br><br>**AMERICAN UNIVERSITY OF ANTIGUA --<br>COLLEGE OF MEDICINE,**<br><br>Respondent. | **Case No.: 50 110 T 00075 11** |



## DISPOSITION OF REQUESTS FOR MODIFICATION
## OF FINAL AWARD

WE, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the Arbitration Agreement entered into between the above named Parties and dated September 25, 2008, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, and having previously rendered a Final Award dated June 22, 2012, and on behalf of Claimant ("Leeward"), by letters dated June 28 and July 5, 2012 as well as on behalf of Respondent ("AUA"), by letter dated July 10, 2012, both having made a Request for Modification of the Final Award pursuant to Rule 48 of the Construction Industry Arbitration Rules, and having read and fully considered the contentions of the Parties, do hereby DETERMINE as follows:

1. The Request for Modification of the Final Award presented by Leeward on June 28, 2012, is granted and the Final Award is modified as follows:

    The last paragraph of page 32 of the Final Award dated June 22, 2012, where it references "Article I of the New York Convention of 1957" has been modified to "Article I of the New York Convention of 1958."

2. The second Request for Modification of the Final Award presented by Leeward on July 5, 2012, is granted and the Final Award is modified as follows:

On page 31, line 1(f) of the Final Award dated June 22, 2012, where it incorrectly states the retainage amount as EC $218,566.74, which is the amount of the retainage in United States dollars at the conversion rate of 0.3704, has been modified to state the correct amount of the retainage as EC $590,083.00 in accordance with the Arbitrators' determination at page 27, paragraph 29 of the Final Award.

3. The Request for Modification of the Final Award presented by AUA on July 10, 2012, is hereby denied.

4. In all other respects, the Final Award dated June 22, 2012 is hereby reaffirmed.

We hereby certify that, for the purposes of Article 1 of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Disposition of Requests for Modification of Final Award was made in San Juan, Puerto Rico.

August 9, 2012
_____
Date

_____
Jorge R. Jiménez, Esq.
Panel Chairman

August 9, 2012
_____
Date

_____
Héctor M. Varela, P.E.
Arbitrator

9 de agosto 2012
_____
Date

_____
José R. Capó, Esq.
Arbitrator

2

State of Puerto Rico   *Affidavit # 305*
County of San Juan

On this 9 day of August, 2012 before me personally came and appeared Jorge R. Jiménez, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledge to me that he executed the same.

August 9th, 2012
Dated

_____
Notary Public

State of Puerto Rico   *Affidavit # 306*
County of San Juan

On this 9 day of August, 2012 before me personally came and appeared Héctor M. Varela, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledge to me that he executed the same.

August 9th, 2012
Dated

_____
Notary Public

State of Puerto Rico   *Affidavit # 307*
County of San Juan

On this 9 day of August, 2012 before me personally came and appeared José R. Capó, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledge to me that he executed the same.

August 9th, 2012
Dated

_____
Notary Public



3

A124





Exhibit D

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| LEEWARD CONSTRUCTION COMPANY, LTD., <br><br> Claimant, <br><br> vs. <br><br> AMERICAN UNIVERSITY OF ANTIGUA – COLLEGE OF MEDICINE, <br><br> Respondent. | Case No.: 50 110 T 00075 11 |

## FINAL AWARD





   We, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the Arbitration Agreement entered into between the above named parties and dated September 25, 2008, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, and the parties having agreed that the Arbitrators need to render a reasoned award, do hereby, AWARD, as follows:

### I.    BRIEF PROCEDURAL BACKGROUND:

   The present case was brought on February 3, 2011 by Leeward Construction Company, LTD. ("Leeward") against American University of Antigua - College of Medicine ("AUA"), claiming the amount of EC $13,161,137[1] from a dispute that arose out of the construction of a medical school in St. Johns, Antigua.   Leeward claimed that AUA breached their contract and sought remedies under § 4.6 of the Contract, henceforth, demanded arbitration for the disputes set forth in their claim.

   AUA filed a response on March 4, 2011, stating that Leeward's claim was so vague, confusing and contradictory that AUA was not in the position to understand the basis for the claims.

   The Panel was selected and sworn on July 6th, 2011, comprised by Attorneys José R. Capó, Jorge R. Jiménez and Professional Engineer Héctor M. Varela. Attorney Jiménez was designated Chair of the Panel.

   On October 14, 2011, Leeward filed an Amended Demand for Arbitration seeking EC $6,800,572.28 in damages.   AUA filed its Answering Statement and Counterclaim on November 30, 2011.

---

[1] Whenever reference is made to a monetary sum, same shall be understood to be represented in Eastern Caribbean (EC) dollars, unless otherwise stated.

On December 12, 2011, Leeward filed a Statement objecting AUA's claims for liquidated damages and delay damages, arguing that such claims have been presented untimely. On December 23, 2011, AUA's filed a Statement in opposition to the motion presented by Leeward to dismiss AUA's counterclaims, asserting the timeliness of its claims.

Afterwards both parties commenced discovery proceedings and filed numerous motions including dispositive motions, the resolution of which the Panel held in abeyance until the holding of the Hearings to be decided as part of the Final Award. We will discuss same in detail in *Section III* of this Award. The Hearings were held in the Marriott Courtyard in Isla Verde, Puerto Rico, from March 5th through March 9th 2012. On April 11, 2012, AUA withdrew from its Answering Statement and Counterclaim the portion that sought actual damages and left only those claims for liquidated damages in the amount of US $117,000 and for attorneys' fees and expenses. As per their request, the parties submitted their Proposed Findings of Facts and Conclusions of Law on April 20, 2012. The parties also submitted rebuttal briefs on May 4th, 2012.

The Panel declared the hearings closed and the case submitted for resolution on May 22, 2012.

This case was administered under the AAA Construction Industry Arbitration Rules ("CIAR") as amended and in effect October 1, 2009.





II.   **UNCONTESTED FACTS:**

1.   Leeward is a corporation duly organized and existing under the laws of the Commonwealth of Antigua and Barbuda, with office and principal place of business at All Saints Road, St. Johns, Antigua.

2.   AUA is owned by the GCLR, LLC, a limited liability company organized and existing under the laws of the State of New York, with office and principal place of business at 1 Battery Park Plaza, 33rd Floor, New York, New York, U.S.A.

3.   In the Spring of 2008, AUA and Leeward began to negotiate the terms of a contract to construct the structural works portion of the AUA's new medical school campus in Antigua.

4.   AUA and Leeward entered into a Letter of Intent on or about April 21, 2008 which was signed by Neal Simon, President of AUA, and Andy Green, Managing Director of Leeward. A copy of the April 21, 2008 Letter of Intent was marked as LC 69.

5.   AUA and Leeward entered into a second Letter of Intent on or about May 10, 2008, which was signed by Corey Greenberg, Chief Operating Officer of AUA, and Andy Green, Managing Director of Leeward. A copy of the May 10, 2008 Letter of Intent was marked as LC 70.

6.   On September 25, 2008, Leeward (as contractor) and AUA (as project owner) executed a contract for the construction of the College of Medicine in St. John's

2

Antigua for the fixed price of EC $27,436,824.00, subject to additions and deductions as provided in the Contract Documents, under the AIA Contract Document (A101-1997).

7.    The parties agreed that the commencement date for the works was May 1, 2008.

8.    Leeward had to achieve substantial completion of the entire work in 364 calendar days or as follows:

| Portion of the work | Substantial Completion Date |
| --- | --- |
| Classroom block | 29/01/2009 |
| Lab Block | 06/03/2009 |
| Service Block | 29/01/2009 |
| Library and Admin. Block | 30/04/2009 |



9.    Lt. Colonel Roche Antony was AUA's representative for the project and signed the Contract Documents on AUA's behalf.

10.    Neil Dickinson was Leeward's Project Manager for the project and signed the Contract Documents on Leeward's behalf.

11.    Sundaram Architects Pvt., Ltd. ("SAPL" or the Architect") was the architect that designed AUA's new Medical School Campus.   A.S. Nagesh served as the Architect's representative.

12.    Leeward and AUA also entered into a number of Separate Contracts, including a contract to install the doors and windows dated July 13, 2009 (marked as LC 228) and a contract of laying floor tiles dated July 13, 2009 (marked as LC 229).

13.    On February 3, 2011, Leeward filed a Demand for Arbitration seeking EC$13,161,137.00 in damages.

14.    On October 14, 2011, Leeward filed an Amended Demand for Arbitration seeking EC$6,800,572.28 in damages.

III.    **TRIAL EXHIBITS:**

A) Leeward's Trial Exhibits

  *Exhibit list 1-245 as amended by the Joint Post-Hearing Motion, dated April 12, 2012.*

B) AUA's Trial Exhibits

  *Exhibit list 1-71 as amended by the Joint Post-Hearing Motion, dated April 12, 2012.*

3

IV.   **WITNESSES:**

A) Leeward's Witnesses

1. Robert Winwood-Senior Quantity Surveyor for Leeward, from Sept. 1, 2008-August 14, 2009. He was responsible for administration and surveying of the work with respect to the Construction of the AUA Project.

2. Eric Linde-Director of Leeward. Over 45 years of hands on experience in the Construction Industry in Antigua and US.

3. Neil Dickinson-Projects Director for Leeward from March 1, 2007 to Feb. 17, 2009, then managing director until Oct. 9, 2009, and was responsible for contract negotiations and administration of the works with respect to the Construction of the AUA Project.

4. Andy Green-Managing Director of Leeward.

B) AUA's Witnesses

1. Prabhu Marudheri-Executive Director of Finance for GCLE, LLC, an agent for AUA.

2. Peter McLeod-Partner with DHP Associates, a firm of Chartered Quantity Surveyors and Project Managers located in the Bahamas.

3. A.S.Nagesh-Architects' representative.

4. Lt. Col. Roche Antony-General Manager on behalf of AUA, for the project.

V.    **INTERLOCUTORY MATTERS:**

1.    Controversy:

Leeward's request to strike the testimony of AUA's witness Peter McLeod based on the fact that same is expert testimony, which AUA had represented it would not be using. The Panel must decide if said testimony is factual or expert testimony.

Panel's Decision:

*Refer to the Panel's Decision in section VI. **(A-25).***

2.    Controversy:

AUA's motion requesting dismissal of Leeward's claims for amounts unpaid or due under the contracts for additional work. The Panel must decide if: (1) Leeward's claim for unpaid

4

balances and monies owed for additional works was included in the Amended Demand for Arbitration, henceforth, providing AUA with due process; and (2) if the parties submitted to arbitration said claims in this proceeding.

Panel's Decision:

After reviewing both parties' arguments and careful analysis of the questions posed, this Panel finds that all claims arising from the Separate Contracts are not subject to this Arbitration.   We find in favor of AUA and conclude that the arbitration clause that both parties agreed to, only reached claims arising out of or relating to the original Contract. Nothing in the Separate Contracts evidence intent from the parties to subject same to arbitration, nor does the record show that AUA agreed to arbitrate disputes under the Separate Contracts.

3.   Controversy:

AUA's motion requesting that Leeward's claims be dismissed for untimely filing.  This Panel must decide if dismissal is appropriate against Leeward, because Leeward's claim for final payment was initiated in violation of the 21 day notice requirement, and because Leeward's 16-20 month delay in commencing arbitration was unreasonable.

Panel's Decision:

After due analysis, this Panel denies AUA's motion requesting that Leeward's claims be dismissed for untimely filing.

4.   Controversy:

Leeward's motion requesting that AUA's counterclaim be dismissed for untimely filing.  This Panel must determine if AUA filed the counterclaim within the time period stated under Section R-4(c)(ii) of the AAA's CIAR.

5

**Panel's Decision:**

After due analysis, this Panel denies Leeward's motion requesting that AUA's counterclaim be dismissed for untimely filing.

## VI.    CONTROVERSIES SUBMITTED TO THE PANEL FOR RESOLUTION:

**A.    Claimant's (Leeward's) controversies submitted to arbitration:**

1. **Controversy:**

Whether the Contract is a fixed price contract subject to additions or deletions by change order or whether the Contract price is based upon measured works?

**Panel's Decision:**

The Panel rules that the Contract is a fixed price contract subject to additions and deletions. Leeward is entitled to receive compensation for work performed.  Even though the Contract provides that additions and deletions should be made by formal change orders, from the evidence considered by the Panel it appears that both parties waived this requirement.

2.   **Controversy:**

Whether AUA breached the Contract with respect to the issuance of change orders, certificates of substantial completion, certificate of final completion, the review, certification, and payment of payment requisitions, the determination of claims, and the administration of the Contract?

**Panel's Decision:**

This Panel finds that both parties failed in their contractual responsibility to follow and enforce the General Conditions of the Contract AIA 201-1997.  The respective liability of each party with respect to certain claims will be addressed in this Final Award.

6

Case 13-1708, Document 92-2, 02/20/2015, 1442819, Page41 of 94

3.   Controversy:

Whether AUA breached the Contract by failing to timely pay the amount due on payment requisitions?

   Panel's Decision:

This Panel finds that AUA did breach the Contract on this matter.  In many instances AUA had concerns regarding the quantities invoiced, however, there were reasonable alternatives in case the parties did not reach an agreement to issue the partial payments, as stated in Article 9.5.1 of the Contract.  This Panel rules that holding the entire amount was far from reasonable and fair.

4.   Controversy:

If AUA breached the Contract by failing to timely pay the amount due on payment requisitions, is Leeward entitled to interest on the late payments at the legal rate under the laws of Antigua and if so, whether 10% per annum is the proper rate?

   Panel's Decision:

This Panel finds that Leeward is entitled to interest on the payments due and unpaid as set forth under sections 7.2 and 13.6.1 of the Contract and General Conditions.  However, this Panel agrees with AUA in that the interest agreed upon by the parties was the "legal rate" and therefore interest shall be calculated at 7% per annum.

5.   Controversy:

If the Contract was for a fixed price, is Leeward entitled to payment for work that AUA omitted, deleted or modified from the Contract's original scope of work?

   Panel's Decision:

No.  Leeward is only entitled to payment for work performed.  However, this Panel finds that Leeward is entitled to damages in the amount of EC $ 232,670.13 for work that was deleted

7

from the Contract and then assigned to Leeward under Separate Contracts, under the bad faith doctrine.

6.   Controversy:

If the Contract price is based upon measured works, what adjustments should be made to the Contract sum for work omitted, deleted or modified from the Contract's original scope of work despite the AUA's failure and refusal to issue change orders?

   Panel's Decision:

The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a decrease in the Contract Sum shall be the actual net cost.

7.   Controversy:

If the Contract was based upon measured works, is Leeward entitled to overhead and/or profit for work omitted, deleted or modified from the Contract's original scope of work and if so, what amount is Leeward entitled to for overhead and/or profit on omitted, deleted or modified work?

   Panel's Decision:

The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a decrease in the Contract Sum shall be the actual net cost. When both additions and credits covering related work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change, i.e., AIA Document A201-1997 General Conditions of the Contract for Construction, Section 7.3.7. Therefore, Leeward is entitled to overhead and profit for work omitted, deleted or modified as claimed, except for the $185,425.07 of overhead and profit for the Doors & Windows and Flooring works that were deleted from the Contract's original scope of work and then given to Leeward under a Separate Contract.

8

8.   Controversy:

What amount is Leeward entitled to for additions to the Contract that should have been added pursuant to change orders had AUA properly issued change orders on the Project?

   Panel's Decision:

This Panel finds that Leeward is entitled to receive compensation for work performed, despite any formal change orders, based on Measured Work and the Bill of Quantities (BOQ).

9.   Controversy:

Whether AUA was responsible for project delays that impaired Leeward's ability to substantially complete the Contract work by the substantial completion dates in the Contract, as extended?

   Panel's Decision:

After a careful study and analysis of the witness statements as well as the evidence presented, the Panel finds that both parties were equally responsible for the project delays. Leeward failed to reach substantial completion of the project in the time that was agreed upon.   The numerous delays and changes to the drawings and the fact that AUA had knowledge of Leeward's request for extension of time, draw us to determine equal responsibility for both parties regarding the delays in the substantial completion.

10.   Controversy:

If AUA is responsible for project delays that impaired Leeward's ability to complete the project by the substantial completion dates in the Contract as extended, then what amount is Leeward entitled to for additional preliminaries as a result of the AUA's actions?

   Panel's Decision:

This Panel finds that both parties were equally responsible for the project delays. Consequently, we find AUA responsible for 50% of the Additional Preliminaries in the

9

amount of EC $477,777.04 and such amount is hereby granted in favor of Leeward.

11. Controversy:

Whether Leeward was responsible for the project delays that caused it to fail to substantially complete the work by the Contract's deadlines?

Panel's Decision:

No. *Refer to Panel Decisions in Section VI. (A-9) and (A-10), above.*

12. Controversy:

If Leeward is responsible for the project delays that caused it to fail to substantially complete the work by the Contract's deadlines, what amount is due from Leeward to AUA for liquidated damages?

Panel's Decision:

*Refer to Panel Decisions in Section VI. (A- 9), (A-10) and (B-36), above.*

13. Controversy:

Whether Leeward substantially complied with the notice of claim provision in the Contract?

Panel's Decision:

By reason of the conduct of the parties during the development, construction and liquidation of the Project, the Panel concludes that the time limit for the notice of claims stipulated in Section 4.3.2 of the General Conditions was waived, as well as Section 4.6.3 of the General Conditions referring to the initiation of an arbitration process. This decision is applicable to both parties.

14. Controversy:

If Leeward did not substantially comply with the notice of claim provision in the Contract, whether AUA waived compliance with such provision?

Panel's Decision:

*See Panel's Decision of Controversy in Section VI. (A-13), above.*

10

15. Controversy:

Whether AUA substantially complied with the notice of claim provision in the Contract?

Panel's Decision:

*See Panel Decisions in Section VI. (A-14) and (A-15), above.*

16. Controversy:

Whether Leeward is entitled to pre-judgment interest on its damages as a result of the AUA's breach of the Contract?

Panel's Decision:

This Panel is awarding pre-judgment interest to Leeward from October 31, 2009, as detailed in the Award, at the rate of 7% per annum.

17. Controversy:

If Leeward is entitled to pre-judgment interest on its damages, is 10% per annum the appropriate rate of interest to be charged under the laws of Antigua and if so, from what date should the interest begin to run?

Panel's Decision:

Yes. *But see Panel's Decision to Controversy 16, above.*

18. Controversy:

Whether Leeward is entitled to payment in the amount of US $30,743.20/EC $83,000.00 for the AUA's acknowledged error in the calculation of ABST payments?

Panel's Decision:

This Panel finds that the ABST error was mutually acknowledged by both parties, and not having been originally claimed and submitted as a controversy in this Arbitration and having been discovered and in good faith informed by AUA representatives during the Hearings,

11

A137

the Panel concludes that this claim should be corrected outside of the context of this Arbitration.

19.   Controversy:

If Leeward is not entitled to any other damages in this proceeding, whether Leeward is entitled to the payment of US $218,566.74/EC $590,083.00 in retainage?

   Panel's Decision:

After careful consideration regarding the works that were deleted from the Contract and then assigned to Leeward under Separate Contracts, this Panel finds that Leeward is entitled to damages under the bad faith doctrine.   Therefore, this Panel grants Leeward damages in an amount equal to EC $232,670.13.   As per Leeward's claim for retainage, refer to the Panel's Decision in section VI. (B-29), infra.

20.   Controversy:

If AUA breached the Contract, is Leeward entitled to damages as specified in Claimant's Proposed Findings of Fact and Conclusions of Law Paragraphs 130, 131, or 133 or some other amount?

    Panel's Decision:

The Panel finds that both parties breached the Contract and therefore, in some instances share direct responsibility for same.   As such, this Panel will not grant damages to Leeward as requested, but as specifically provided in the Award on page 31.

21.   Controversy:

Whether the additional works contracts Leeward entered into with AUA are subject to arbitration?

   Panel's Decision:

The Panel finds that the additional works contracts are not subject to this Arbitration.

12

Case 13-1708, Document 92-2, 02/20/2015, 1442819, Page47 of 94

22.   Controversy:

If the additional works contracts are subject to arbitration, then what is the amount due from AUA to Leeward for the unpaid balances on the additional works contracts?

Panel's Decision:

The Panel finds that the Separate Contracts Leeward entered into with AUA are not subject to this Arbitration.

23.   Controversy:

Whether the arbitration was commenced within a reasonable time not to exceed the statute of limitations for breach of contract actions under the laws of Antigua?

Panel's Decision:

The Panel finds that this Arbitration was commenced timely.

24.   Controversy:

What is the statute of limitations for breach of contract actions under the laws of Antigua?

Panel's Decision:

The Panel finds that this Arbitration was commenced within the six (6) year term.

25.   Controversy:

Whether the Panel should strike the AUA's witness statement of Peter McLeod on the grounds that Mr. McLeod's witness statement constitutes an expert opinion that AUA failed to disclose until the eve of the hearing after representing to the Panel during a telephone conference on December 15, 2011 that it did not foresee the use of expert witness testimony?

Panel's Decision:

This Panel finds that Peter McLeod's testimony is not that of an expert witness. Therefore, all parts of his witness statement and testimony rendered based on his opinion as an expert are stricken from the record. However, this Panel considered as factual the testimony

13

Case 13-1708, Document 92-2, 02/20/2015, 1442819, Page48 of 94

offered by Peter McLeod which relates to his personal knowledge and intervention in the negotiation of the Contract Documents, and will give it the probatory value it deems appropriate.

26.  Controversy:

Whether Leeward is entitled to attorneys' fees, arbitration fees, expenses and compensation as provided under the laws of Antigua or otherwise?

   Panel's Decision:

Considering that both parties shared responsibility regarding some of the controversies submitted and in the management of the Contract, the Panel finds no compelling reason to grant attorney's fees, arbitration fees, expenses and compensation as provided under the laws of Antigua or otherwise.  Each party shall bear their own attorneys' fees, arbitration expenses and such the like.

**B.   RESPONDENTS (AUA'S) CONTROVERSIES SUBMITTED TO ARBITRATION:**

1.   Controversy:

Is Leeward barred from seeking to be paid EC $1,604,617 for work it did not perform as a result of design changes and site conditions (like the chain link fence) (the "Omitted Work") because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a Claim throughout the course of construction and no later than October 2009, but initiated it no sooner than December 17, 2010 - 14 months later?

   Panel's Decision:

The Panel finds that Leeward is barred from seeking to be paid for work it did not perform, not because it failed to initiate a claim, but because the evidence received and considered by the Panel is that the Contract was a fixed sum contract subject to additions and deductions, and Leeward would be paid for work it actually performed, based on the BOQ.

14

Case 13-1708, Document 92-2, 02/20/2015, 1442819, Page49 of 94

In regards to the "timeliness" of Leeward's claim, it is the determination of the Panel that both parties breached various provisions of the Contract and are, therefore, barred from enforcing said provisions against each other.

2.   Controversy:

Even if Leeward had initiated a claim timely, is Leeward entitled to be paid for the Omitted Work on the ground that AUA did no document changes in the scope of Leeward's work by issuing formal change orders in the manner provided by Section 7 of the General Conditions, or did the parties waive the formal change order procedure by implementing another method, i.e., the monthly requisition process, to document additions and deductions to the Contract Sum, as evidenced by the parties' course of conduct throughout the duration of the Project?



   Panel's Decision:

*See Panel's Decision to Controversy 1, supra.*

3.   Controversy:

Is Leeward barred from pursuing its new alternative claim that it be paid overhead and profit on the Omitted Work for one or more of the following separate reasons:

   a)  Because Leeward asserted its new alternative claim for the first time in its post-trail submission, in violation of Section R-6(b) of the AAA's CIAR, thereby depriving AUA of a fair opportunity to proffer a defense? Or

   b)  Because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim throughout the course of the construction and no later than October 2009, but never initiated a claim and raised the issue for the first time in Leeward's April 2012 Proposed Findings of Facts and Conclusion of Law? Or

   c)  Because the new claim was not asserted in Leeward's February 3, 2011 Demand for Arbitration or its October 14, 2011 Amended Demand for Arbitration, but instead raised for the first time on April 20, 2012, in violation of Section 4.6.5 of the General Conditions, which provides that the "party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded"?

15

Panel's Decision:

This Panel will not exclude any claim under the sole contention of timeliness. Therefore, Leeward is not barred from pursuing its claim for the payment of overhead and profit on the Omitted Work.

4.   Controversy:

Even if Leeward had initiated its new alternative claim for overhead and profit on the Omitted Work timely in accordance with the Contract Documents and the CIAR, is Leeward entitled to be paid overhead and profit on the Omitted Work given the testimony that the parties intended to use the Bills of Quantities to value changes to the scope of the work necessitated by design changes and site conditions, and given that Leeward never sought to be paid its overhead and profit Omitted Work?

Panel's Decision:

Yes. This Panel finds that Leeward is entitled to overhead and profit for work omitted, deleted or modified, except for the $185,425.07 of overhead and profit for the Doors & Windows and Flooring works that were deleted from the Contract's original scope of work and then given to Leeward under a Separate Contract.

5.   Controversy:

Is Leeward barred from seeking to be paid for the Flooring Work that AUA deleted from Leeward's scope of work because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward admits it was aware of the facts giving rise to such a claim no later than April 21, 2009, but initiated a claim no sooner than December 17, 2010 – 20 months later?

Panel's Decision:

The Panel finds that both parties were at fault with their mutual responsibilities in following and enforcing the General Conditions of the Contract, therefore, this Panel will not exclude

16

any claim under the sole contention of timeliness. The evidence also showed that Leeward in many instances notified AUA of its claims, even though it was not in the manner set forth in the Contract. Therefore, the Panel finds that Leeward is entitled to receive compensation for work performed; however, with regard to the Flooring Work, which is part of the Separate Contracts, same is not subject to this Arbitration.

6.    Controversy:

Even if Leeward had initiated a claim timely, is Leeward entitled to be paid for the Flooring Work that AUA deleted from Leeward's scope of work on the ground that AUA did not document the deletion of this work by issuing formal change orders in the manner provided by Section 7 of the General Conditions, or did the parties waive the formal change order procedure by implementing another method, *i.e.*, the monthly requisition process, to document additions and deductions to the Contract Sum, as evidenced by the parties' course of conduct throughout the duration of the Project?

Panel's Decision:

The Panel finds that the Separate Contracts are not subject to this Arbitration. Therefore, this Panel will not grant remedies for the Flooring Work.

7.    Controversy:

Is Leeward barred from pursuing its new alternative claim that it be paid overhead and profit on the Flooring Work (EC $1,741,032 * 18% = EC $313,385.76) for one or more of the following separate reasons:

a) Because Leeward asserted this new alternative claim for the first time in its post-trial submissions, in violation of CIAR R-6(b), thereby depriving AUA of a fair opportunity to proffer a defense? Or

b) Because Leeward failed to initiate a claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim on April 21, 2009 and no later than October 2009, but never initiated a claim and raised the issue for the first time in Leeward's April 20, 2012 Proposed Findings of Fact and Conclusions of Law? Or

17

c) Because the new alternative claim was not asserted in Leeward's February 3, 2011 Demand for Arbitration or its October 14, 2011 Amended Demand for Arbitration, but instead raised for the first time on April 20, 2012, in violation of Section 4.6.5 of the General Conditions, which provides that the "party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded"?

<u>Panel's Decision:</u>

The Panel finds that each party is barred from alleging non-compliance against each other regarding the terms of the Contract under the sole contention of timeliness and, therefore, will consider all claims brought without regard to timeliness. However, this Panel finds that Leeward is entitled to overhead and profit for work omitted, deleted or modified, but not for the Flooring Work, which was given to Leeward under a Separate Contract.

8.     <u>Controversy:</u>

Even if Leeward had initiated its alternative claim for overhead and profit on the Flooring Work timely under the Contract Documents and the CIAR, is Leeward entitled to be paid EC $313,385.76 in overhead and profit on the Flooring Work given that Leeward entered into a separate contract with AUA on July, 2009 to perform this work, and was paid under the terms of that separate contract?

<u>Panel's Decision:</u>

No. *Refer to Panel's Decision in Section VI. (B-7), above.*

9.     <u>Controversy:</u>

There is no decision to render with respect to the Modified Work Delta of negative EC $14,294.10. Leeward is not seeking to recover any money reflected in this delta, which reflects that Leeward was paid more by seeking payment for work "as built" and in accordance with the "final measure" that it would have received had it been paid based upon the measurements in the initial Bills of Quantities.

18

A144

Panel's Decision:

This Panel finds that Controversy number 9, as stated by AUA, does not require the Panel's decision for it does not constitute a claim. In the alternative, the Panel finds the claim to be inadmissible and therefore, dismissed and denied.

10.   Controversy:

Is Leeward barred from pursuing its May 11, 2009 Claim for an Extension of Time and the accompanying Additional Preliminaries in the amount of EC $955,554.08 (the difference between the EC $5,891,857.68 in Preliminaries sought by Leeward and the EC $4,936,303.60 approved and paid by AUA) because it failed to initiate the claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward admits that it was aware on January, 2009 that it was not going to complete its work within the Contract Time?

Panel's Decision:

No. Although this Panel finds that both parties were not in strict compliance with the Contract and Contract documents, Leeward is not barred from its claim regarding the responsibility for delays and substantial completion. Consequently, this Panel finds AUA responsible for 50% of the Additional Preliminaries amounting to EC $477,777.04 and such amount is hereby granted in favor of Leeward.

11.   Controversy:

Is Leeward barred from pursuing its Claim for an Extension of Time and the accompanying Additional Preliminaries in the amount of EC $955,554.08 because it failed to commence arbitration within a reasonable amount of time after its accrual in accordance with Section 4.6.3 of the General Conditions, given that the Claim accrued in January 2009 and Leeward waited until February 3, 2011 – 25 months later – to commence arbitration?

19

Panel's Decision:

No. *Refer to Panel's' Decision in Controversy number 10, above, where the controversy relative to the Additional Preliminaries is resolved.*

12.   Controversy:

Even if Leeward had initiated its Claim for Additional Preliminaries timely and commenced arbitration in a reasonable amount of time, is Leeward entitled to Additional Preliminaries based upon the ground asserted in its May 11, 2009 Claim, *i.e.*, that it had been denied access to a $500,000.00 (EC $1,350,000.02) set aside for Non-Productive Overtime, given the absence of any evidence that such an account was agreed to by the parties or that the alleged lack of access to overtime impacted the critical path and caused the damages asserted?

Panel's Decision:

Yes. *Refer to the Panel's Decision in Controversy number 10, above.*

13.   Controversy:

Aside from the Claim for Additional Preliminaries based on the alleged denial of Non-Productive Overtime initiated on May 11, 2009, did Leeward timely initiate any other claims for an extension of the Contract Time or an increase in the Contract Sum for the Additional Preliminaries in accordance with Section 4.3 of the General Conditions based on any other alleged theory of delay?

Panel's Decision:

This Panel finds that each party is barred from alleging non-compliance with the terms of the Contract and, therefore, will consider all claims brought without regards to timeliness. AUA shall refer to the Award as to claims granted, on pages 31-32.

20

14.     Controversy:

If so, did Leeward establish that each such claim for delay satisfied each of the following elements: (a) caused by AUA; (b) impacted the critical path; and (c) resulted in a specific loss of time or amount of damages?

Panel's Decision:

After a careful study and analysis of the witness statements as well as the evidence presented, the Panel finds that both parties were responsible for the project delays. Leeward failed to reach substantial completion of the project in the time that was agreed upon. However, the numerous delays and changes to the drawings and the fact that AUA had knowledge of Leeward's request for extension of time, draw us to determine equal fault for each party regarding the delays in the substantial completion. Moreover, AUA shall refer to the Award on pages 31-32, as to the claims granted.

15.     Controversy:

Is Leeward barred from seeking to be paid EC $190,210.19 more than the EC $1,232,008.91 it was already paid for additional work it documented as "Change Orders" in the monthly payment applications because Leeward failed to initiate a Claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim no later than October 26, 2009, but initiated a Claim no sooner than December 17, 2010 -- 14 months later?

Panel's Decision:

The Panel finds that Leeward is entitled to payment for all work performed under the Contract subject to this Arbitration, without consideration to the timeliness of the claims.

16.     Controversy:

Even if Leeward had timely initiated a claim to be paid an additional EC $190,210.19 for Change Order work, is Leeward entitled to be paid this money given that Leeward did not

21

make a demand for payment contemporaneous with the payment of its Draft Final Account and given that Leeward did not otherwise submit evidence to substantiate its right to payment?

Panel's Decision:

From the evidence presented at trial, the Panel finds that Leeward is entitled to the additional EC $190,210.19. Consequently, the Panel grants Leeward's claim for EC $190,210.19.

17.   Controversy:

Is Leeward barred from pursuing its claim to recover EC $19,475.40 for the Whitsuntide Holiday because it failed to commence arbitration within a reasonable amount of time after its accrual in accordance with Section 4.6.3 of the General Conditions, given that the claim accrued on June 1, 2009 and Leeward waited until February 3, 2011 – 21 months later – to commence arbitration?

Panel's Decision:

The Panel finds that Leeward is not barred from any of its claims based on timeliness. However, claims pertaining to delays in the completion of the Project are subject to the Panel Decisions in *Section VI. (B-14) and (B-15), above.*

18.   Controversy:

Even if Leeward had commenced arbitration in a reasonable amount of time, is Leeward entitled to EC $19,475.40 in damages for closing the construction site on June 1, 2009 for the Whitsuntide Holiday given that the holiday occurred after the May 14, 2009 deadline for Leeward to complete its work under the Contract Documents?

Panel's Decision:

No.  Refer to the Panel's Decision in *Section VI. (B-14), above.*

22

19.   Controversy:

Is Leeward barred from seeking payment for an additional EC $162,372.12 in "claims" out of the EC $181,847.52 sought in the Amended Demand for Arbitration because Leeward failed to initiate a Claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that Leeward was aware of the facts giving rise to such a claim no later than October 26, 2009, but initiated a Claim no sooner than December 17, 2010 – 14 months later?

Panel's Decision:

This Panel finds that each party is barred from alleging non-compliance with the terms of the Contract and therefore, will consider all claims brought without regards to timeliness, except those that were specifically distinguished by the Panel's legal reasoning in each of the controversies submitted for resolution in the Award on page 31.

20.   Controversy:

Even if Leeward had timely initiated a claim, is Leeward entitled to recover an additional EC $162,372.12 in "claims" given that Leeward was already paid that precise amount, EC $162,372.12, for these identical "claims," as confirmed by the Draft Final Account submitted by Leeward, certified by the Architect, and paid by AUA?

Panel's Decision:

This Panel finds that Leeward was rightfully paid for extra work, and for the "claims" (adverse weather and holiday) for a total of EC $1,232,008.91 in Change Orders and EC $162,372.12 in 'Claims' paid in the Draft Final Account.

21.   Controversy:

Is Leeward barred from seeking EC $1,000,000 allegedly due and owing from the Cash Allowance portion of the Contract Sum because Leeward failed to initiate a Claim within 21 days of its accrual in accordance with Section 4.3.2 of the General Conditions, given that

23

Leeward was aware of the facts giving rise to such a claim no later than October 26, 2009, but initiated a claim no sooner than December 17, 2010 – 14 months later?

Panel's Decision:

This Panel finds that each party is barred from alleging non-compliance with the terms of the Contract and therefore, will consider all claims brought without regards to timeliness, except those that were specifically distinguished by the Panel's legal reasoning in each of the controversies submitted for resolution in this Award.

22.   Controversy:

Even if Leeward had timely initiated such a claim, is Leeward entitled to recover EC $1,000,000 from the Cash Allowance component of the initial Contract Sum for contingent costs, including craneage, scaffolding and overtime, given that the EC $2,262,166.51 that Leeward billed for and received for such contingent costs includes the EC $1,000,000 allocated to contingent costs in the EC $27,436,824 Contract Sum, which Leeward uses as costs?

Panel's Decision:

This Panel finds that Leeward is not entitled to its claim for Cash Allowance because the evidence received and considered demonstrated to the Panel that, Leeward was paid EC $2,262,166.51 in Cash Allowance, with included the EC $1,000,000.00 claim.

23.   Controversy:

Is Leeward barred from pursuing to recover overhead and profit on the EC $191,090 in Doors and Windows Work deleted by AUA from Leeward's scope of work because it failed to commence arbitration within a reasonable amount of time after its accrual in accordance with Section 4.6.3 of the General Conditions, given that the claim accrued on April 21, 2009 and Leeward waited until February 3, 2011 – 22 months later – to commence arbitration?

24

Panel's Decision:

This Panel finds that Leeward is barred from pursuing the overhead and profit on the EC $191,090 in Doors and Windows Work deleted by AUA because such work was then given to Leeward under a Separate Contract and, therefore, is not subject to this Arbitration. Refer to the Panel's Decision in Section *V. (2)*.

24.     Controversy:

Even if Leeward had commenced arbitration in a reasonable amount of time on its claim for overhead and profit on the Doors and Windows Work, is Leeward entitled to recover EC $34,396.20 as and for its overhead and profit on this work given that the unit rates contained in the initial Bills of Quantities were "provisional sum rates" and given that Leeward entered into a separate contract with AUA in July 2009 to perform this work?

Panel's Decision:

No. *Refer to Panel's Decision in Controversy number 23, above.*

25.     Controversy:

Is Leeward barred from pursuing its claim to recover overhead and profit on the EC $1,735,589 in Painting Work deleted by AUA from Leeward's scope of work because Leeward failed to commence arbitration within a reasonable amount of time after its accrual in accordance with Section 4.6.3 of the General Conditions, given that the claim accrued on April 21, 2009 and Leeward waited until February 3, 2011 – 22 months later – to commence arbitration?

Panel's Decision:

The Panel finds that each party is barred from alleging non-compliance with the terms of the Contract and, therefore, will consider all claims brought without regards to timeliness, except those that were specifically distinguished by the Panel's legal reasoning in each of the controversies submitted for resolution in this Final Award.

25

26.    Controversy:

Even if Leeward had commenced arbitration in a reasonable amount of time on its claim for overhead and profit on the Painting Work, is Leeward entitled to recover EC $312,406.02 as and for its overhead and profit on this work given that Leeward would have incurred more in liquidated damages had the Painting Work not been removed from Leeward's scope of work than it seeks to recover in overhead and profit for this work?



Panel's Decision:

Yes. *Refer to the Panel's Decision in Section VI. (A-7).*

27.    Controversy:

Is Leeward barred from seeking to recover monies allegedly due and owing under the Separate Contracts in the arbitration for either of the following separate reasons:

   a)  Claims under the Separate Contracts are not arbitrable because AUA did not agree to arbitrate them; Or

   b)  In the event Leeward's payment claims under the Separate Contracts fall within the scope of the arbitration provision (Section 4.6.1 of the General Conditions), because Leeward failed to initiate any claims within 21 days of their accrual in accordance with Section 4.3 of the General Conditions.

Panel's Decision:

Yes. This Panel finds in favor of AUA in that works that were performed under Separate Contracts are not subject to this Arbitration

28.    Controversy:

Even if Leeward's claims under the Separate Contracts are subject to arbitration, and even if Leeward had initiated claims timely, has Leeward established that AUA only paid Leeward EC $1,359,035.40, in the aggregate, on the Separate Contracts and owes it an additional EC $202,943 on these contracts based upon the proposed contract amounts, particularly considering the evidence presented by AUA that Leeward was to be paid as per actual work (not the proposed amounts), and that Leeward was paid EC $1,452,261.32 for that work?

26

Panel's Decision:

No.  *See Panel Decisions in Section VI. (A-7 and (B-2).*

29.    Controversy:

Is Leeward entitled to an award for the EC $590,083 that AUA holds as retainage given that Leeward has not provided evidence that it satisfied its obligations under Section 9.10.2 of the General Conditions to provide "an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered have been paid or otherwise satisfied."?

Panel's Decision:

This Panel finds that the only issue regarding the retainage is the submittance by Leeward to AUA of the required documents.  Therefore, this Panel hereby Orders Leeward to comply with Section 9.10.02 of the General Conditions, as applicable to the particular Project within the term provided in the Award on pages 31-32 and, thereafter, AUA must pay the remaining 2.5% of the Contract Sum equal to EC $590,083.00, without interest, if paid within the time allowed.

30.    Controversy:

Should the mutual accounting mistake discovered by AUA on the eve of trial that resulted in Leeward receiving EC $83,059.56 less than was reflected in the Draft Final Account be part of any arbitration award, and potentially subject to the assessment of interest, given that Leeward never notified AUA of the error, or specifically demanded payment, or asserted any claim to recover this amount?

27

A153

Panel's Decision:

This Panel determines that the ABST error was mutually acknowledged by both parties, and not having it been submitted as a controversy of this Arbitration and having it been discovered and in good faith informed by an AUA representative during the hearings, we conclude that this issue should be resolved outside of the context of this Arbitration.

31.    Controversy:

Is Leeward entitled to an award of interest for any portion of Leeward's EC $6,701,390.33 demand? If so, when should interest begin to run given Leeward's long delay in commencing arbitration on the three claims it actually initiated during the Project (i.e., Additional Preliminaries, Whitsuntide Holiday and Overhead and Profit on the Painting Work and Doors and Windows Work) and given Leeward's failure to identify the remainder of its claims until filing its Amended Demand for Arbitration dated October 14, 2011?

Panel's Decision:

This Panel finds that Leeward is entitled to the claims recognized in this Award as herein stated. These claims shall accrue interest at the rate of 7% per annum, since the date of termination of the Project, October 31, 2009, as determined by the Panel; except for those claims that are specifically without interest.

32.    Controversy:

Did Leeward establish that AUA failed to pay one or more monthly payment applications timely, and if so, then what is the date of each such late payments and is Leeward entitled to an award of interest on any alleged late payments?

Panel's Decision:

Yes. See Panel's Decision in Controversy (A-3) in Section VI.

28

33.   Controversy:

Is Leeward entitled to an award of interest on any allegedly late mobilization payments, or were its claims with respect to this issue settled in January 2009 as set forth in AUA Ex. 67 at AUA 003269?

   Panel's Decision:

The Panel finds that the disputes regarding mobilization were resolved with a payment by AUA in December 22, 2009 and a settlement was reached by the parties in January 13, 2009.

34.   Controversy:

To the extent Leeward is awarded any interest, should the rate of interest equal the statutory judgment rate in Antigua of 5%, given that the Contract Documents refer to the "legal rate" in Antigua?

   Panel's Decision:

The Panel finds that Leeward is entitled to interest on the payments due and unpaid as set forth under Section 13.6.1 of the Contract and General Conditions as of October 3, 2009. However, this Panel finds that the interest shall be calculated at 7% per annum.

35.   Controversy:

Is Leeward entitled to recover any of its legal fees and expenses in prosecuting its claims or in defending AUA's counterclaim for Liquidated Damages?

   Panel's Decision:

Upon careful consideration and considering that both parties were equally at fault (Leeward 50%- AUA 50%) regarding some of the controversies submitted and in the management of the Contract, the Panel finds no compelling reason to grant attorney's fees, arbitration fees, expenses and compensation as provided under the laws of Antigua or otherwise.  Each party shall bear their own attorneys' fees, arbitration expenses and such the like.

29

36.   Controversy:

Is AUA entitled to an award of Liquidated Damages in the amount of US $117,000.00 based upon Leeward's failure to achieve Substantial Completion within the Contract Time, but instead doing so 78 days later?

   Panel's Decision:

After a careful analysis and evaluation of the witness statements as well as the evidence presented to the Panel, we find that both parties shared responsibilities for the project delays and, consequently, Leeward is responsible for 50% of the Liquidated Damages in the amount of EC $157,950.00[2], and such amount is hereby granted in favor of AUA.

37.   Controversy:

Is AUA entitled to setoff Liquidated Damages from the retainage it currently holds?

   Panel's Decision:

No.   The Panel finds neither spurious allegations in Leeward's claims, nor intentional wrongdoing to award damages to AUA.   Consequently, AUA is denied its claim to setoff Liquidated Damages.

38.   Controversy:

Is AUA entitled to recover any of its legal fees and expenses in defending the claims asserted by Leeward and in prosecuting its counterclaim for Liquidated Damages?

   Panel's Decision:

Upon careful consideration and considering that both parties were at fault regarding some of the controversies submitted and in the management of the Contract, the Panel finds no compelling reason to grant attorney's fees, arbitration fees, expenses and compensation as

---

[2] As per AUA's counterclaim for Liquidated Damages, the amount was expressed in US dollars and not EC dollars, therefore, considering the current currency conversion, said amount was calculated at $315,900.00 of which 50% is granted to AUA for $157,950.00.

provided under the laws of Antigua or otherwise.  Each party shall bear their own attorneys' fees, arbitration expenses and such the like.

## AWARD

Accordingly, we ORDER and AWARD as follows:

1. Within thirty (30) days from the date of issuance of this Final Award Respondent AUA shall pay to Claimant Leeward the following amounts:

| | | |
|---|---|---|
| a) Interest on the Payments Due and Unpaid | EC $44,617.37 | This sum shall accrue interest of 7% per annum from the date of issuance of termination of the Project, October 31, 2009. |
| b) Damages | EC $232,670.13 | This sum shall accrue interest of 7% per annum from the date of issuance of this Final Award. |
| c) Overhead and Profit for work deleted, omitted or modified | EC $802,399.25 | This sum shall accrue interest of 7% per annum from the date of termination of the Project, October 31, 2009 |
| d) Additional Preliminaries | EC $477,777.04 | This sum shall accrue interest of 7% per annum from the date of termination of the Project, October 31, 2009 |
| e) Change Order Work | EC $190,210.19 | This sum shall accrue interest of 7% per annum from the date of termination of the Project, October 31, 2009 |
| f) Retainage | EC $590,083.00 | This sum shall not accrue any interest. Leeward shall submit to AUA all contractually required documentation as set forth in Section 9.10.2 of the General Conditions. Leeward will have a term of not more than 30 calendar days from the date of issuance of this Final Award to submit said documentation. Once Leeward has submitted all required documentation accordingly, AUA shall release the retainage in a term not to exceed 30 calendar days, upon after which such amount shall start accruing interest at the rate of 7% per annum. If Leeward fails to comply with Section 9.10.2, of the General Conditions in the time hereby stated and granted the claim for such amount will be considered |

31

relinquished. Considering that this case is sub-judice, the herein referred notice may be made by counsel for Leeward to counsel for AUA, or by Leeward to AUA.

2. As per AUA's counterclaim for Liquidated Damages, this Panel grants 50% of such in the amount of EC $157,950.00, which will accrue interest at the rate of 7% per annum from the date of this Final Award.

3. The administrative fees and expenses of the International Centre for Dispute Resolution (ICDR) totaling $17,550.00 shall be borne by the parties as incurred. The compensation and expenses of the Panel totaling $151,992.75 shall be borne by the parties as incurred.

4. The terms of this Final Award shall be complied within thirty (30) days from the date of this Final Award.

This Final Award is in full settlement of all claims and counterclaims submitted to this Arbitration.

This Final Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

Per the arbitration clause, the location of the arbitration is Antigua; however, the parties jointly agreed for the Hearings to be held in Isla Verde, Puerto Rico. We hereby certify that, for the purposes of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in Isla Verde, Puerto Rico, on June 22, 2012, amended *nunc pro tunc* on this 8 day of August, 2012.

32

8 | 8 | 2012
Date

Jorge R. Jiménez, Esq.
Panel Chairman

8 | 8 | 2012
Date

Héctor M. Varela, P.E.
Arbitrator

8 | 8 | 2012
Date

José R. Capó, Esq.
Arbitrator

State of Puerto Rico
County of San Juan   Affidavit # 301

On this 8 day of August, 2012 before me personally came and appeared Jorge R. Jiménez, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledge to me that he executed the same.

8 | 8 | 2012
Dated

Notary Public

State of Puerto Rico
County of San Juan   Affidavit # 302

On this 8 day of August, 2012 before me personally came and appeared Héctor M. Varela, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledge to me that he executed the same.

8 | 8 | 2012
Dated

Notary Public

State of Puerto Rico
County of San Juan   Affidavit # 303

On this 8 day of August, 2012 before me personally came and appeared José R. Capó, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledge to me that he executed the same.

8 | 8 | 2012
Dated

Notary Public

33



301



# 302



# 303

US District        S~~~~~~~~~~~~~
        COURT
STATE OF NEW YORK, COU~~~~~~                    ~~dex No.            Year

LEEWARD CONSTRUCTION COMPANY LIMITED

                              Petitioner,

        -against-

AMERICAN UNIVERSITY OF ANTIGUA - COLLEGE OF MEDICINE,

                              Respondent..

### NOTICE OF PETITION/MOTION TO CONFIRM ARBITRATION AWARD

### LEWIS & GREER, P.C.

*Attorney(s) for*
                    *Leeward Construction Company Ltd.*
        *Office and Post Office Address, Telephone*

                    510 Haight Avenue, Suite 202
                    POUGHKEEPSIE, NEW YORK 12603
                          (845) 454-1200

To                                    Signature (Rule 130-1.1-a)

                                      _____

                                      Print name beneath


                                      Service of a copy of the within is hereby admitted.

                                      Dated: _____

Attorney(s) for

PLEASE TAKE NOTICE:

☐ NOTICE OF ENTRY

that the within is a *(certified) true copy of a*
duly entered in the office of the clerk of the within named court on

☐ NOTICE OF SETTLEMENT

that an order                                    of which the within is a true copy
will be presented for settlement to the HON.              one of the judges of the
within named Court, at
on                          at              M.

Dated,

                              Yours, etc.

                              LEWIS & GREER, P.C.

A161

UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
LEEWARD CONSTRUCTION COMPANY, LTD.

Case No. 1:12-CV-06280-LAK/GWG
(ECF CASE)

Petitioner,

-against-

Honorable Lewis A. Kaplan
United States District Judge

AMERICAN UNIVERSITY OF ANTIGUA --
COLLEGE OF MEDICINE AND MANIPAL
EDUCATION AMERICAS, LLC f/k/a GCLR, LLC,

**AMENDED
PETITION**

Respondents.
--------------------------------------------------------------x

Leeward Construction Company, Ltd., by its attorney Lewis & Greer, P.C. hereby petitions and moves this court pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §201 *et seq.*, for an order confirming a Final Arbitration Award, certified June 22, 2012 and modified August 8, 2012, and for entry of a money judgment against the Respondents for the amounts stated in the Award:

## INTRODUCTION

1.      This proceeding arises out of a contract between the Petitioner and Respondent, American University of Antigua -- College of Medicine for the construction of a medical school in St. Johns, Antigua.

2.      The General Conditions to the Contract contain an arbitration clause that requires the parties to arbitrate any claim arising out of or related to the Contract in accordance with the Construction Industry Rules of the American Arbitration Association. (An original copy of the Contract containing the arbitration clause was introduced into evidence at the arbitration

A162

hearing is submitted herewith as Exhibit A.  The arbitration agreement is set forth in Section 4.6 of the General Conditions to the Contract, which is at page AUA 000036.)

3.      On February 3, 2011, the Petitioner initiated an arbitration against the AUA with respect to claims arising out of or related to the Contract and on June 22, 2012, a panel of three arbitrators certified a Final Arbitration Award, in favor of the Petitioner, exclusive of interest at the rate of seven percent (7%) per annum as provided in the Award, in the amount of EC $2,619,130.19, which converts to US $970,130.19.[1]  The Final Award was modified on August 8, 2012, to correct some minor clerical errors in the Award.  (A copy of the Final Award certified June 22, 2012 is submitted herewith as Exhibit B; a copy of the Resolution dated August 9, 2012, modifying the Final Award is annexed hereto, as Exhibit C; a copy of the Final Award as modified on August 8, 2012 is annexed hereto as Exhibit D.)

## PARTIES

4.      Petitioner, Leeward Construction Company, Ltd. ("Leeward" or "Petitioner") is a corporation duly organized and existing under the laws of the Commonwealth of Antigua and Barbuda, with office and principal place of business at All Saints Road, St. Johns, Antigua.

5.      Respondent American University of Antigua -- College of Medicine ("AUA") is owned and operated by the Respondent Manipal Education Americas, LLC f/k/a GCLR, LLC ("MEA"), a limited liability company organized and existing under the laws of the State of New

---

[1] The Arbitration Tribunal awarded damages in Eastern Caribbean Dollars ("EC").  As of June 22, 2012 and August 8, 2012, the conversion rate for Eastern Caribbean dollars to United States dollars is 0.3704 United States dollars for each Eastern Caribbean dollar, and United States dollar to Eastern Caribbean dollar is 2.700 Eastern Caribbean dollars for each United States dollar.  *See* http://www.likeforex.com.  For purposes of this Petition/Motion, the Petitioner will reference the award going forward in both United States Dollars and Eastern Caribbean Dollars.

2

York, with an office and principal place of business at 1 Battery Park Plaza, 33rd Floor, New York, New York, U.S.A. (collectively, hereinafter "Respondents").

## JURISDICTIONAL STATEMENT

6.      This Court has jurisdiction over this proceeding pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §203 (the "Convention").

7.      This Court also has jurisdiction over the proceeding pursuant to 28 U.S.C. §1332(a)(2) in that the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest, and costs, and is between citizens of a State and citizens or subjects of a foreign state.

## VENUE

8.      Pursuant to 9 U.S.C. §204 and 28 U.S.C. §1391(b)(1) venue is proper in the United States District Court for the Southern District of New York because the MEA is a resident of the District.

## FACTS

9.      On September 25, 2008, Leeward, as contractor, and the AUA, as owner, executed a contract for the construction of a medical school in St. Johns, Antigua.

10.      The General Conditions to the Contract contain an arbitration clause that reads as follows:

§ 4.6 ARBITRATION

§ 4.6.1  Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration.

§ 4.6.2  Claims shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect.  The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.  Location of any Arbitration will be Antigua.

11.  On February 3, 2011, Leeward commenced an arbitration proceeding against the AUA with the American Arbitration Association International Center for Dispute Resolution ("AAA") to arbitrate claims arising out of or related to the Contract.

12.  Although the Arbitration Agreement provides for the location of the arbitration to take place in Antigua, the parties stipulated and agreed to conduct the arbitration in Puerto Rico.

13.  Pursuant to the Construction Industry Rules of the American Arbitration Association, the AAA appointed a panel of three arbitrators to hear and determine the claims.

14.  The arbitration hearing at the Courtyard Marriott in Isla Verde, Puerto Rico took place from March 5, 2012 through March 9, 2012 and the arbitrators declared the hearing closed and the case submitted for resolution on May 22, 2012.

15.  By Final Award certified June 22, 2012 and modified on August 8, 2012, the Arbitrators directed the AUA to pay damages to Leeward with interest at the rate of seven percent (7%) per annum as follows (Exhibit B, pp. 31-32):

| Award | Amount in US$/ EC$ | Comments | Date Interest Runs From | Interest Per Diem Amount in US$/ EC$ | Total Accrued Interest Through August 14, 2012 in US$/ EC$ | Total with Interest in US$/ EC$ |
|---|---|---|---|---|---|---|
| a.) Interest on the Payments Due and Unpaid | US$16,526.27/ EC$44,617.37 | This sum shall accrue interest of 7% per annum from the date of issuance of termination of the Project, October 31, 2009. | October 31, 2009 | US$3.17/ EC$8.56 | US$3,266.47/ EC$8,710.78 | US$19,752.75/ EC$53,328.15 |

4

| b.) Damages | US$86,181.02/ EC$232,670.13 | This sum shall accrue interest of 7% per annum from the date of issuance of this Final Award. | June 22, 2012 | US$16.53/ EC$44.62 | US$875.89/ EC$2,364.95 | US$87,056.99/ EC$235,035.08 |
|---|---|---|---|---|---|---|
| c.) Overhead and Profit for work deleted, omitted or modified. | US$297,208.68/ EC$802,399.25 | This sum shall accrue interest of 7% per annum from the date of issuance of termination of the Project, October 31, 2009. | October 31, 2009 | US$57.00/ EC$153.88 | US$58,024.91/ EC$156,654.71 | US$355,233.59/ EC$959,053.96 |
| d.) Additional Preliminaries | US$176,968.62/ EC$477,777.04 | This sum shall accrue interest of 7% per annum from the date of issuance of termination of the Project, October 31, 2009. | October 31, 2009 | US$33.94/ EC$91.63 | US$34,550.09/ EC$93,277.79 | US$211,518.71/ EC$571,054.83 |
| e.) Change Order Work | US$70,453.85/ EC$190,210.19 | This sum shall accrue interest of 7% per annum from the date of issuance of termination of the Project, October 31, 2009. | October 31, 2009 | US$13.51/ EC$36.48 | US$13,754.91/ EC$37,135.28 | US$84,208.76/ EC$227,345.47 |
| f.) Retainage | US$218,566.74/ EC$590,083.00 | This sum shall not accrue any interest. Leeward shall submit to AUA all contractually required documentation as set forth in Section 9.10.2 of the General Conditions. Leeward will have a term of not more than 30 calendar days from the date of issuance of this Final Award to submit said documentation. Once Leeward has submitted all required documentation accordingly, AUA shall release the retainage in a term not to exceed 30 calendar days, upon after which such amount shall start accruing interest at the rate of 7% per annum. If Leeward fails to comply with Section 9.10.2, of the General conditions in the time hereby stated and granted the claim for such amount will be considered relinquished. Considering that this case is sub-judice; the herein referred notice may be made by counsel for Leeward to counsel for AUA , or by Leeward to AUA. | August 12, 2012 | US$41.92/ EC$113.17 | US$83.83/ EC$226.33 | US$218,650.58/ EC$590,309.33 |

5

| | Total Award US$865,905.19 EC$2,337,756.98 | | | | Total Accrued Interest: US$110,516.19 EC$298,369.84 | Total with Interest: US$976,421.37 EC$2,636,126.82 |
|---|---|---|---|---|---|---|

16.     Leeward has complied with the terms and conditions of the Final Award, including the requirements for the payment of contract retainage as set forth in paragraph 1(f) of the Award (Exhibit B, pp. 31-32). (An affidavit of compliance is submitted herewith as Exhibit C.)

17.     Upon information and belief, MEA, AUA's owner, is an agent and/or alter-ego of the AUA as a result of:

(a)     a disregard of the corporate formalities between the AUA and MEA;

(b)     inadequately capitalization of the AUA and/or the AUA and MEA have intermingled their funds (A copy of a check from GCLR, LLC to Lewis & Greer, P.C. is submitted herewith as Exhibit E; Copies of wire transfer receipts from a New York bank account to Leeward are submitted herewith as Exhibit F.)

(c)     an overlap in personnel between the AUA and MEA; and

(d)     a common office space, address and/or telephone number for the AUA and MEA, in that MEA's New York offices are used to run the AUA's operation (Screenshots of the AUA's website are submitted herewith as Exhibit G.).

As a result of the foregoing, as an agent and/or alter-ego of the AUA, MEA is bound by the Final Award.

6

A167

18.     Pursuant to the Final Award, Leeward is entitled to Judgment against the Respondents in amount of US $976,421.37/EC $2,636,126.82, which includes interest as provided in the Award through August 14, 2012, no part of which has been paid, although duly demanded.

**WHEREFORE**, for reasons set forth herein, Petitioner Leeward Construction Company, Ltd. petitions and moves this Court to confirm the Final Arbitration Award and enter a judgment against the Respondent as follows:

a.      Interest on payments due and unpaid in the amount of US $16,526.27/EC$ 44,617.37 plus interest at the rate of 7% per annum from October 31, 2009.

b.      Damages in the amount of US $86,181.02/EC $232,670.13 plus interest at the rate of 7% per annum from June 22, 2012.

c.      Overhead and profit for work deleted, omitted or modified in the amount o US $297,208.68/EC $802,399.25 plus interest at the rate of 7% per annum from October 31, 2009.

d.      Additional preliminaries in the amount US $176,968.62/EC $477,777.04 plus interest at the rate of 7% per annum from October 31, 2009.

e.      Change order work in the amount of US $70,453.85/EC $190,210.19, plus interest at the rate of 7% per annum from October 31, 2009.

f.      Retainage in the amount of US $ 218,566.74/EC$ 590,083.00 plus interest at the rate of 7% per annum from August 12, 2012.

g.      Such other and further relief as the Court may deem just and proper.

Dated: October 16, 2012
      Poughkeepsie, New York

Veronica A. McMillan, Esq. (VM1107)
**LEWIS & GREER, P.C.**
*Attorney for Petitioner,*
*Leeward Construction Company, Ltd.*
510 Haight Avenue, Suite 202
Poughkeepsie, New York 12603
Telephone: (845) 454-1200

To:    Michael B. Goldsmith, Esq.
       Katherine Lieb, Esq.
       Sills, Cummis & Gross, P.C.
       *Attorney for Respondents,*
       *American University of Antigua -- College of Medicine*
       *and Manipal Education Americas, LLC f/k/a GCLR, LLC,*
       30 Rockefeller Plaza
       New York, New York 10112
       Telephone: (212) 643-7000

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

LEEWARD CONSTRUCTION COMPANY,
LTD.,

               Petitioner,

               v.

AMERICAN UNIVERSITY OF ANTIGUA –
COLLEGE OF MEDICINE and MANIPAL
EDUCATION AMERICAS, LLC f/k/a GCLR,
LLC,

               Respondents.

-----------------------------------------------------------x

Case No. 1:12-CV-06280-LAK/GWG
(ECF Case)

Honorable Lewis A. Kaplan
United States District Judge

**NOTICE OF CROSS-MOTION TO
DISMISS PURSUANT TO *FORUM
NON CONVENIENS* AND FED. R.
CIV. P. 12(B)(6), OR IN THE
ALTERNATIVE, TO VACATE OR
MODIFY THE ARBITRATION
AWARD**

**PLEASE TAKE NOTICE** that, on a time and date to be set by the Court, or as soon

thereafter as counsel may be heard, respondents American University of Antigua – College of

Medicine and Manipal Education Americas, LLC f/k/a GCLR, LLC (collectively,

"Respondents") shall cross-move before the Honorable Lewis A. Kaplan, U.S.D.J., at the Daniel

Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY, 10007, for an

Order pursuant to the *forum non conveniens* doctrine and Fed. R. Civ. P. 12(b)(6) to dismiss the

action of petitioner Leeward Construction Company, Ltd. to confirm its arbitration award, or in

the alternative, to vacate or modify the award pursuant to the Federal Arbitration Act, 9 U.S.C. §

1, *et seq.*, and for such other relief as the Court deems just and proper.

PLEASE TAKE FURTHER NOTICE that in support of their motion, Respondents shall

rely upon the Memorandum of Law, and the Declarations of Leonard Sclafani and Katherine M.

Lieb (with exhibits) submitted herewith.

Dated: New York, New York
      September 25, 2012

                                Respectfully submitted,

                                SILLS CUMMIS & GROSS P.C.
                                30 Rockefeller Plaza
                                New York, New York 10112
                                (212) 643-7000

                                By:_ s/ Katherine M. Lieb_____
                                    MICHAEL B. GOLDSMITH
                                    KATHERINE M. LIEB

                                *Attorneys for Respondents*
                                *American University in Antigua – College of*
                                *Medicine and Manipal Education Americas,*
                                *LLC f/k/a GCLR LLC*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

LEEWARD CONSTRUCTION COMPANY,
LTD.,

                Petitioner,

         v.

AMERICAN UNIVERSITY OF ANTIGUA –
COLLEGE OF MEDICINE and MANIPAL
EDUCATION AMERICAS, LLC f/k/a GCLR,
LLC,

                Respondents.

-------------------------------------------------------------x

Case No. 1:12-CV-06280-LAK/GWG
(ECF Case)

Honorable Lewis A. Kaplan
United States District Judge

**DECLARATION OF
KATHERINE M. LIEB**

Katherine M. Lieb, being duly sworn, deposes and says:

    1.    I am an associate with Sills Cummis & Gross P.C., counsel for respondents American University of Antigua – College of Medicine and Manipal Education Americas, LLC f/k/a GCLR, LLC (collectively, "Respondents"), and am fully familiar with all the facts and circumstances hereinafter set forth herein.

    2.    I submit the within declaration in support of Respondents' cross-motion to dismiss this matter on forum non conveniens grounds and, in the alternative, in opposition to petitioner Leeward Construction Company, Ltd.'s motion to confirm an arbitration award and in support of the cross motion to vacate or modify.

    3.    Attached hereto as Exhibit A is a copy of the Arbitration Act of Antigua and Barbuda, dated August 15, 1975.

4.      Attached hereto as Exhibit B is a copy of a Judgment in *One Call Construction Company Ltd. v. Grenada Solid Waste Management Authority*, decided September 8, 2010, by the Court of Appeal of Grenada.

5.      Attached hereto as Exhibit C is a copy of an excerpt from *Redfern & Hunter on International Arbitration*, 5th Edition.

6.      Attached hereto as Exhibit D is a copy of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, dated June 10, 1958.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

KATHERINE M. LIEB

Dated: September 25, 2012

2

A173

# Exhibit C

Case 1:12-cv-00286-LAK   Document 16-5   Filed 03/23/12   Page 2 of 4

# REDFERN AND HUNTER ON INTERNATIONAL ARBITRATION

NIGEL BLACKABY
CONSTANTINE PARTASIDES
WITH
ALAN REDFERN
MARTIN HUNTER



OXFORD
UNIVERSITY PRESS

*The Award*

**9.123**  The pattern is the same in national laws. Switzerland requires a reasoned award, as do the Netherlands and England, unless the parties agree to dispense with them.[148] In the US, however, the highest court has ruled that: 'Arbitrators have no obligation to the court to give their reasons for an award.'[149] An exception to this rule is where the parties have provided for reasons to be given in their arbitration agreement or in any arbitration rules they have chosen. The ICDR Rules require reasons to be given unless the parties agree otherwise,[150] but the AAA's domestic rules maintain the tradition in the US that reasons are not given.

**9.124**  The general consensus in favour of a reasoned (or 'motivated') award is reflected in the European Convention of 1961, which states:

> The parties shall be presumed to have agreed that reasons shall be given for the award unless they
>
> (a) either expressly declare that reasons shall not be given; or
>
> (b) have assented to an arbitral procedure under which it is not customary to give reasons for awards, provided that in this case neither party requests before the end of the hearing, or if there has not been a hearing then before the making of the award, that reasons be given.[151]

*(v) Different ways of giving reasons*

**9.125**  The way in which reasons are given in arbitral awards varies considerably. Sometimes the reasoning (or 'motivation') is set out with extreme brevity. However, a mere statement that the arbitral tribunal accepted the evidence of one party and rejected the evidence of the other, which was a common practice in some circles, had rightly fallen into disrepute by the end of the twentieth century. Certainly such a practice would be regarded as being defective as a matter of form by the ICC Court. In other cases, awards may run into hundreds of pages, including a detailed review of the evidence and arguments put forward by the parties, followed by a closely reasoned conclusion.

**9.126**  The general practice of arbitral tribunals in international cases is to devote more time and space in the award to giving the reasons for its determination of the legal arguments than it devotes to a review of the factual issues. This is not surprising, since most arbitral tribunals in international cases are composed of lawyers.[152]

---

[148]  English Arbitration Act 1996, s 52(4).

[149]  *United Steelworkers of America v Enterprise Wheel Car Corp*, 363 US 593, at 598 (1960). US federal courts appear to have continued to rule consistently that arbitrators are 'not required to justify, explain, or otherwise give reasons for the . . . award'; see, eg, *Michael M Pfeifle v Chemoil Corporation* 73 Fed Appx 720, at 722 (2003).

[150]  ICDR Rules, Art 27(2).

[151]  European Convention of 1961, Art VIII.

[152]  Even where the party-nominated arbitrators are technical specialists, expert in the subject-matter of the project or transaction, it is usual for the presiding arbitrator to be a lawyer.

*D.  Validity of Awards*

However, it should be borne in mind by such tribunals that what is needed is an intelligible decision, rather than a legal dissertation. The object should be to keep the reasons for a decision as concise as possible and limited to what is necessary, according to the nature of the dispute. The parties want the essential *reasoning* underlying the decision, not a lesson in the law.[153]

#### (d)  Time limits

A limit may be imposed as to the time within which the arbitral tribunal must make its award. When this limit is reached, the authority or mandate of the arbitral tribunal is at an end and it no longer has jurisdiction to make a valid award. This means that where a time limit exists, care must be taken to see that either:

- the time limit is observed; or
- the time limit is extended before it expires.

The purpose of time limits is to ensure that the case is dealt with speedily. Such limits may be imposed on the arbitral tribunal by the rules of an arbitral institution, by the relevant law, or by the agreement of the parties.

**9.127**

The laws of a number of countries provide for time limits within which an award must be made, sometimes starting from the date upon which the arbitration itself commenced. In India, the 1996 Arbitration Act has dispensed with a time limit that was imposed by the old law. In the US the position varies from state to state. In some states the limit is 30 days from the date on which the hearings are closed. However, time limits in the US may also be extended by mutual agreement of the parties or by court order.

**9.128**

It is important that a fixed time limit for rendering the award should not enable one of the parties to frustrate the arbitration. This might happen if a fixed limit were to run from the appointment of the arbitral tribunal rather than, for example, the end of the hearings. If a court has no power to intervene on the application of one party alone, and the time limit can be extended only by agreement of the parties, a party might frustrate the proceedings simply by refusing to agree to any extension of time. However, the courts of many countries would be reluctant to invalidate a late award in such a case. For example, in New York it was held that an untimely award was not a nullity, even though the issue of timeliness was properly raised. The court stated that, without a finding of prejudice, there was no justification for denying confirmation of the award.[154]

**9.129**

---

[153]  See Bingham, n 142 above; and for the risks that the alleged absence of reasons may lead to an arbitral award being overturned, see Redfern, 'ICSID—Losing its Appeal?' (1987) 3 Arb Int 98.

[154]  *State of New York Department of Taxation and Finance v Valenti* 57 AD 2d 174 and 393 NYS 2d 797.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

LEEWARD CONSTRUCTION COMPANY,
LTD.,

          Petitioner,

          v.

AMERICAN UNIVERSITY OF ANTIGUA –
COLLEGE OF MEDICINE and MANIPAL
EDUCATION AMERICAS, LLC f/k/a GCLR,
LLC,

          Respondents.

-----------------------------------------------------------x

Case No. 1:12-CV-06280-LAK/GWG
(ECF CASE)

Honorable Lewis A. Kaplan
United States District Judge

**DECLARATION OF
LEONARD SCLAFANI**

Leonard Sclafani, being duly sworn, deposes and says:

1.     I am the Senior Vice President and General Counsel of Manipal Eucation Americas, LLC, agent for American University of Antigua-College of Medicine ("AUA"), and unless otherwise stated, I am fully familiar with all the facts and circumstances hereinafter set forth herein.

2.     I submit the within declaration in support of AUA's cross-motion to dismiss this matter on forum non conveniens grounds and in the alternative in opposition to petitioner Leeward Construction Company, Ltd.'s ("Leeward") motion to confirm an arbitration award and in support of the cross motion to vacate or modify. A copy of Leeward's petition is attached hereto as Exhibit A.

3.     As set forth herein and in the accompanying memorandum of law, this dispute and its adjudication have no contact whatsoever with New York State or in fact, the United

States, and the appropriate forum to consider Leeward's application and respondents' cross motion to vacate the award is Antigua.

**The Parties**

4.      Respondent AUA is a corporation organized and existing under the laws of Antigua and Barbuda (hereinafter, "Antigua"), with an office and principal place of business at Coolidge, Antigua.  AUA was chartered by the Government of Antigua in 2004 to operate a medical school.  Its principal and only place of business is in Antigua.  AUA does not now have, nor has it ever maintained, an office in the United States.

5.      Manipal Education Americas LLC f/k/a GCLR LLC ("MEA") is a limited liability company organized and existing under the laws of the State of New York. MEA provides back office and administrative services, such as accounting, finance and registarial services,  for institutions of higher education internationally. AUA is one of MEA's clients and has been since AUA was first formed.  Since December 2007, MEA has owned 100% of the stock of AUA.

6.      Leeward is an Antiguan corporation.  Upon information and belief, Leeward has never transacted business in the United States and does not now, nor has it ever, maintained an office in the United States.

**Background of the Dispute**

7.      In 2008, discussions were initiated between representatives of AUA and Leeward concerning the construction of a new medical school campus for AUA in Antigua.  In furtherance of those discussions, a written agreement was entered into between AUA and Leeward (the "Construction Agreement") pursuant to which Leeward was retained to construct the campus in Antigua.  A copy of the Construction Agreement is annexed as Exhibit A to the

Petition to Confirm the Arbitration Award. The Construction Agreement was between AUA and Leeward. MEA was not a party to the Construction Agreement nor was it a party to the underlying arbitration.

8.     Indeed, the only reason that it appears that Leeward has made MEA a party to this motion is to try to convince the court that this dispute has a semblance of a contact with the United States or New York in particular. It does not.

9.     The Construction Agreement required any disputes to be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA"). The Construction Agreement further required that any such arbitration would be conducted in Antigua. The Construction Agreement also provided that the contract was to be governed by and construed according to the laws of Antigua and Barbuda. (*See* Construction Agreement, AUA 000036 & AUA 000051.)

10.    More than two years after the project was completed, Leeward initiated an arbitration proceeding against AUA before the AAA under its Construction Arbitration Rules. By coincidence, all of the members of the panel of arbitrators that the parties selected resided in Puerto Rico. During the September 8, 2011 initial administration hearing for the arbitration, the arbitrators requested that, for their own convenience and logistical reasons, that the hearing locale be moved to Puerto Rico; however, the application of Antiguan law remained a fundamental premise of the arbitration. Both parties ultimately consented to the proposed change in the situs of the arbitration hearing. In addition to its ruling that the arbitration would be governed under and by Antiguan law as the parties had expressly agreed, the Tribunal ruled during the September 8, 2011 initial hearing that the award in this Arbitration would be a

"Reasoned Award as provided for in Rules L-6 and R-[44(a)] of the AAA." A true and correct copy of this ruling is annexed hereto as Exhibit B.

11.     Under Leeward's initial arbitration demand, Leeward sought the recovery of approximately EC$13,000,000, or, in US currency, US$ 4,887,178 for various unspecified damages it claimed to have experienced under the contract. In response to an application filed by AUA, Leeward was required to re-file its demand to specifically delineate its claim, a copy of which is annexed hereto as Exhibit C. In the amended demand, Leeward reduced its claim by half and sought the following relief:

| Original Contract Amount Sum (BS 9) | EC $27,436,824.00 | US$10,162,599.61 |
| Deleted Work (Summary of Deleted Work, Annexed Hereto) | EC $1,948,755.32 | US $721,818.97 |
| Overhead and Profit (18%) on Deleted Work (Article 14.4.3 of General Conditions; Schedule of Claim) | EC $350,775.96 | US $129,927.42 |
| Revised Contract Sum | EC $25,838,844.64 | US $9,570,708.05 |
| Approved Extra Work — Paid (Revised Statement of Claim and BS 50-60) | EC $1,422,219.10 | US $526,789.95 |
| Approved Extra Work — Unpaid (Revised Statement of Claim and BS 52, 55, 56) | EC $181,847.52 | US $67,356.32 |
| Additional Work (Revised Statement of Claim and BS 258-282) | EC $1,361,628.64 | US $504,347.25 |
| Additional Preliminaries/General Conditions (BS 11, 283-286) | EC $1,985,711.68 | US $735,507.61 |
| Total | EC $30,790,251.58 | US$11,404,709.19 |
| Payments Received (BS 16) | EC $23,989,679.30 | US$8,885,777.21 |
| TOTALS: | EC $6,800,572.28 | US$2,518,931.97 |

12.     Briefly, Leeward claimed that is was entitled to be paid the original contract sum of EC $27,436,824, notwithstanding that, as the job progressed, changes were made that

eliminated from it significant portions of the construction, thereby reducing significantly scope of the work, labor, services and materials that Leeward was required to deliver. Leeward also claimed that it was entitled to sums under the contract for work that it had performed and had already been paid for under subsequent agreements that the parties had entered into after that work had been removed from the scope of Leeward's work under the original contract. Leeward made this claim despite that such would result in Leeward's being paid twice for work that it performed once. Lastly, Leeward sought to recover various monies as damages, including EC $350,775.96 for the overhead and profits that Leeward would have been paid for specific work that had been removed from Leeward and that had been given to another contractor to provide.

13.    The actual arbitration proceeded first, by each party's written submission of its witnesses direct testimony, followed by live cross examinations, rebuttals and arguments that were held before the arbitrators in Puerto Rico on March 5 through March 9, 2012. Following the conclusion of the oral testimony, the parties submitted proposed findings of fact and conclusions of law. Copies of AUA's findings of fact and conclusions of law are annexed as Exhibit D and Leeward's as Exhibit E. When AUA received Leeward's proposed findings of fact and conclusions of law, it was shocked to learn that, contrary to the relief sought in the demand, Leeward was now seeking, as an alternative to being paid in full (EC $3,345,649) for work it did not perform or work that it performed under separate contacts, only the overhead and profits that it would have been paid for such work (EC $602,216.82). AUA vehemently objected to the interposition of this claim, made by Leeward for the first time subsequent to the close of testimony, particularly in light of the fact that Leeward had had numerous opportunities, both during the project, prior to the hearing, and at the hearing itself, to assert this claim. *See* AUA's

Rebuttal Submission, ¶¶ 26-38, attached hereto as Exhibit F.  In its post-hearing reply papers to

the arbitrators, AUA noted among other things:

> Indeed, at no time during the hearing did Leeward seek Overhead and Profits on
> Omitted Work and neither party submitted any evidence in support of or in
> defense of such a Claim . . . . Were Leeward permitted to add this new claim now,
> AUA would be deprived of the opportunity to submit evidence in response, as it
> did not have a reason to do so at the hearing.

Exhibit F, ¶ 37.

**The Arbitration Award**

14.     On June 25, 2012, the arbitrators issued an award.  A copy of the arbitration

award is annexed as Exhibit B to the Petition to Confirm the Arbitration Award (the "Award").

Although the Award itself is lengthy, it breaks down the separate issues submitted to them by

each side in question and answer form – first answering the issues as posed by Leeward, and then

as posed by AUA.  In several key areas, the award was fraught with glaring deficiencies.  Thus,

for example, it grants relief beyond the scope of the issues that were raised by the parties and

tried before the arbitrators.  Moreover, and while in most instances, the arbitrators do provide

some limited reasoning for their decision, in several key areas they completely failed to do so,

notwithstanding that the Rules governing the arbitration as the arbitrators themselves had

expressly found required them to provide a "reasoned award."  These glaring deficiencies of the

Award can be broken down into four categories:

(A)     The arbitrators awarded Leeward EC $232,670.13 under the "bad faith

doctrine."  This award was made even though Leeward never asked to be awarded additional

damages under the "bad faith doctrine" or any other theory.  As the court will see from reviewing

the post-hearing findings of fact and conclusions of law submitted by the parties, Leeward did

not raise or make any claim for damages based on any assertion that AUA's was guilty of "bad

faith," and did not, at any time before, during or after the arbitration hearing was concluded, reference any "bad faith doctrine," much less any facts related to it. As a result, neither party briefed the "bad faith doctrine." Moreover, while the award was required to be a reasoned award, the arbitrators failed to refer to any factual basis, or provide any citation or explanation of legal authority as to how or why they calculated this damage award. They did so notwithstanding that the amount that they awarded under the "bad faith doctrine" was not a rounded or round number, but was a very precise amount, down to the dollar. As noted in AUA's application to the arbitrators to modify the award, the arbitrators were required to provide reasons for their award; it was not sufficient for the arbitrators to cite evidence that was adduced at the hearing without providing any indication as to how that evidence satisfied the elements of the claims of the party in whose favor the arbitrators made their award. It was certainly improper for the arbitrators to find in favor of a party on claims that the party did not raise without providing a legal basis or any reason for them to do so. *See* Redfern & Hunter on International Arbitration (5[th] Ed, § 9.125).

(B)     The arbitrators awarded Leeward a total of EC $802,399.25 in lost profits and overhead. The Award included both what Leeward had actually sought prior to and during the hearing, *i.e.*, EC $350,557 in overhead and profits for work that had been removed from the contract and given to another contractor, and also what Leeward had sought for the first time in its post-trial submissions, *i.e.*, overhead and profit for work that it had not performed at due to changes in the design of the project and the scope of Leeward's work thereunder (what the parties called "Omitted Work.") The Award also granted sums to Leeward for work that it had it performed and was paid for under separate contracts – what the parties called the "Flooring Work." It did so despite that Leeward had argued up to and through the hearing only that it was

entitled to be paid in full for the Omitted Work and the Flooring Work under the terms of the Contract Documents, and had never asserted a claim to the effect that, if its claim for payment of the full contract price was rejected, it was entitled to be paid overhead and profits on this work. AUA defended (successfully) Leeward's claim that it was entitled to payment in full for the Omitted Work and the Flooring Work. However, AUA did not defend, because it had not been asserted, Leeward's new fall back claim for lost profit and overhead on the Omitted Work and Flooring Work.

In short, the arbitrators adjudicated a claim that was not submitted to the Tribunal by Leeward prior to the hearings or, in fact, during the course of the hearings. As noted hereinabove, the first time that Leeward made such a claim was in its proposed findings of fact and conclusions of law, thereby depriving AUA of an opportunity to proffer any defense to this claim. By permitting a post-hearing amendment of claims, the arbitrators ignored the rules of the AAA, exceeded their powers and issued an award that deals with a claim not contemplated by, nor falling within the terms of the submission to arbitration. As a result, the Tribunal awarded far more in overhead and profits than AUA was on notice to defend at the hearing.

(C)     The Award also granted Leeward EC $190,201.19 (final award Section VI(B-16)) for various extra work that Leeward claimed it had performed, but for which it had not been paid (the parties called this work the "Change Order Work.") The sole basis and support for this portion of the award to Leeward consisted of the arbitrators' conclusory statement as follows: "From the evidence presented at trial, the panel finds that Leeward is entitled to the additional EC $190,201.19." No basis or reason is given for this award, which is particularly troubling given that the contemporaneous documentary evidence presented at the hearing unambiguously demonstrated that, long before Leeward commenced the arbitration,

representatives of Leeward and AUA had met with each other, had investigated Leeward's claims in this regard, had negotiated the issue and had agreed that Leeward was not entitled to these monies. As a result, this portion of the award failed to constitute a "reasoned award."

(D)     Finally, AUA believes that the award is defective because it contains an obvious arithmetical error. Leeward's proposed findings of fact and conclusions of law sought interest on late payments for both monthly invoices and mobilisation at a rate of 10%. The Tribunal awarded interest on alleged late payments of monthly invoices throughout the duration of the project. (*See* Award, VI.(A-3) and VI.(A-4)). The Tribunal denied interest on mobilisation payments, however, ruling that any claims arising out of mobilisation payments had been settled previously. (Award, VI.(B-33)). Finally, the Tribunal rejected Leeward's request to apply a 10% interest rate; it found 7% to be the appropriate rate. (Award, VI.(A-4)). However, when the Tribunal calculated Leeward's interest award in light of its rulings, it simply reduced the total amount of interest that Leeward had claimed for both monthly invoices and mobilisation from 10% to 7% without removing that portion of the interest that Leeward had claimed was attributable to mobilization. This was clearly contrary to their ruling that Leeward was not entitled to any sums or interest for mobilisation because the claims for these sums had already been settled. Had the arbitrators calculated the interest award correctly, Leeward would have been awarded EC$17,152.92 and not EC $44,617.37. This is a clear computational error in the award.

15.     Under the limited grounds provided by the AAA rules, AUA filed a motion with the Tribunal seeking a modification and correction of the award with respect to the four issues raised above, which application is annexed as Exhibit G. The arbitrators denied AUA's motion