# 13-1708-cv

## United States Court of Appeals

*for the*

## Second Circuit

LEEWARD CONSTRUCTION COMPANY, LTD.,

*Petitioner-Appellee,*

— v. —

AMERICAN UNIVERSITY OF ANTIGUA-COLLEGE OF MEDICINE,

*Respondent-Appellant,*

MANIPAL EDUCATION AMERICAS, LLC, FKA GCLR, LLC,

*Respondent.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR RESPONDENT-APPELLANT AMERICAN UNIVERSITY ANTIGUA-COLLEGE OF MEDICINE

JAMES M. HIRSCHHORN
SILLS CUMMIS & GROSS P.C.
*Attorneys for Respondent-Appellant*
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Respondent-Appellant American University of Antigua-College of Medicine states that it is a wholly-owned subsidiary of Manipal Education Americas LLC. Manipal Education Americas LLC is a wholly-owned subsidiary of Manipal Education (Mauritius) Pvt. Ltd., which is a wholly-owned subsidiary of Manipal Global Education Services Pvt. Ltd. MEMG International, Ltd. is the parent corporation of Manipal Global Education Services Pvt. Ltd.

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................... 1

STATEMENT OF JURISDICTION ....................................................... 2

STATEMENT OF ISSUES PRESENTED FOR REVIEW ................... 3

STATEMENT OF THE CASE ............................................................... 3

    A. The Parties ................................................................................... 3

    B. The Arbitration ........................................................................... 4

    C. The Award ................................................................................... 7

        1.    Damages Under the "Bad Faith Doctrine" ............................... 7

        2.    Change Order Work ................................................................ 8

    D. The District Court's Decision ..................................................... 9

SUMMARY OF ARGUMENT ............................................................ 10

ARGUMENT ...................................................................................... 11

I.     THE STANDARD OF REVIEW ................................................ 11

II.    THE ARBITRATORS COMMITTED MISCONDUCT BY AWARDING DAMAGES FOR "BAD FAITH" ON THEIR OWN MOTION WITHOUT GIVING AUA NOTICE OR OPPORTUNITY TO CONTEST THAT GROUND ................... 13

III.   THE ARBITRATORS EXCEEDED THEIR POWERS BY FAILING TO PROVIDE A REASONED AWARD ON THE AMOUNT OF DAMAGES ..................................................... 17

CONCLUSION ................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Cat Charter LLC v. Sortenberger*,
    646 F. 3d 836 (11th Cir. 2012) ............................................................... passim

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
    333 F.3d 383 (2d Cir. 2003) ....................................................................12

*Kolel Beth Yechiel Michil of Tartakov, Inc. v. YLL Irrevocable Trust*,
    799 F.3d 99 (2d Cir. 2013) .....................................................................11

*Leeward Constr. Co. Ltd. v. American University of Antigua – College of
    Medicine*, 2013 U.S. Dist. LEXIS 43550 (S.D.N.Y March 26, 2013) ...........3, 4, 5

*Medline Indus. v. Maersk Med.*,
    230 F. Supp. 2d 857 (N.D. Ill. 2002) ......................................................16

*Rain CII Carbon LLC v. Conoco Phillips Co.*,
    674 F.3d 469 (5th Cir. 2012)......................................................... 17, 18, 18fn. 6

*Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*,
    668 F.3d 60 (2d Cir. 2012) .....................................................................11

*Sher v. JP Morgan Chase Funding Inc. (In re TMST, Inc.)*,
    2014 Bankr. LEXIS 4707 (Bankr. S.D.N.Y. 2014*)*....................................16

*Stolt-Nielsen S.A. v. Animalfeeds Intl. Corp.*,
    559 U.S. 662 (2013) ...........................................................................11, 12

*T. Co. Metals, LLC v. Dempsey Pipe and Supply, Inc.*,
    592 F.3d 329 (2d Cir. 2010)...................................................................15

*Tempo Shain Corp. v Bertek, Inc.*,
    120 F.3d 16 (2d Cir. 1997) ...................................................................12, 16

**STATE CASES**

*Basis Yield Alpha Fund (Master) v Goldman Sachs Group, Inc.*,
    37 Misc. 3d 1212(A), 2014 N.Y. Misc. LEXIS 4960 (Sup. Ct. N.Y. Cty.
    Oct. 18 2012).......................................................................................16

# TABLE OF AUTHORITIES
(continued)

Page(s)

*MBIA Ins. Co. v. Royal Bank of Canada*,
   28 Misc. 3d 1225(A), 2010 N.Y. Misc. LEXIS 3958 (Sup. Ct.
   Westchester Cty. Aug. 19, 2010) ................................................................16

**FEDERAL STATUTES**

9 U.S.C. § 10(a) .................................................................................. 11fn. 4

9 U.S.C. § 10(a)(3) ........................................................................1, 10, 11, 15

9 U.S.C. § 10(a)(4) ........................................................................1, 10, 12, 17

9 U.S.C. § 203 ...........................................................................................2

28 U.S.C. § 1291 .......................................................................................2

**RULES**

Fed. R. Civ. Proc. 52 .............................................................................1, 19

**OTHER AUTHORITIES**

Official Website of the Government of Antigua and Barbuda
   http://www.ab.gov.ag/article_details.php?id=182&category=66 ................... 15fn. 5

Commonwealth Network, http://www.commonwealthofnations.org/sectors-
   antigua_and_barbuda/business/legal/ .......................................................... 16fn. 5

*Restatement (Second) Contracts* § 205 ...........................................................14

## PRELIMINARY STATEMENT

American University of Antigua – College of Medicine ("AUA") appeals from the decision of the District Court confirming an arbitration award ("Award") in favor of Leeward Construction Company Ltd. ("Leeward") that arose under a contract ("Agreement") for the construction of AUA's campus in Antigua. The District Court erred because the Award should have been modified in two respects.

First, the arbitrators awarded Leeward damages under the otherwise unexplained "bad faith" doctrine, which they invoked on their own motion for the first time in the award. In doing so, they committed misconduct, in violation of 9 U.S.C. § 10(a)(3), because their belated invocation of "bad faith" denied AUA any opportunity to argue, first that the governing law of Antigua and Barbuda does not imply a covenant of good faith and fair dealing into commercial contracts, and second, that AUA had acted in good faith and for justifiable reasons.

Second, the arbitrators exceeded their powers, in violation of 9 U.S.C. § 10(a)(4), because they failed to render a reasoned award, as the Agreement required, with respect to the amount of several items of damages. While a reasoned award does not require the detail of findings and conclusions under Fed. R. Civ. Proc. 52, it does require a statement of reasons sufficient to trace the arbitrators' result to the underlying evidence. With respect to the amount of

1

damages for "bad faith" and two other breaches of contract, the Award merely states figures, with no explanation or basis.

For the foregoing reasons, the Court should modify the Award in part by vacating the award of damages for bad faith and vacating the award of damages in amounts unexplained.

## STATEMENT OF JURISDICTION

This appeal arises from an action to enforce an arbitration award. Jurisdiction of the District Court was based on the Convention for the Enforcement of Foreign Arbitral Awards ("New York Convention"), 9 U.S.C. § 203.

Final judgment in favor of Petitioner was entered on March 28, 2013 (A. 403 ), an amended judgment on May 23, 2013 (A. 404) , and a corrected amended judgment was entered on June 11, 2013. (A. 407). AUA filed its Notice of Appeal on April 29, 2013. (A. 12). The decision below is a final judgment disposing of all claims of all parties. This Court's jurisdiction is based on 28 U.S.C. § 1291.

On August 20, 2013, the parties stipulated pursuant to LAR 41.2 to dismiss the appeal without prejudice. (A. 418). The stipulation was renewed on July 30, 2014 (A. 419) and again on December 3, 2014. (A. 420). After Leeward declined to stipulate further, AUA reinstated the appeal on February 2, 2015. (A. 421).

2

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Whether the arbitrators committed misconduct by awarding damages based on legal grounds that were not raised at the hearing, thereby depriving AUA of the opportunity to submit evidence relevant to those grounds?

2.     Whether the arbitrators exceeded their powers by failing to render a reasoned opinion with respect to the amount of damages?

## STATEMENT OF THE CASE

This is an action to enforce an arbitration award.  Leeward's Petition was filed on August 16, 2012 (A.  27), and AUA cross-moved to dismiss or to modify or vacate the award on September 25, 2012.  (A.  170).  An amended petition was filed on October 16, 2012.  (A. 161)  After oral argument, Judge Louis A. Kaplan issued his memorandum opinion enforcing the award on March 26, 2013.  (A. 13). The opinion is reported at *Leeward Constr. Co. Ltd. v. American University of Antigua – College of Medicine*, 2013 U.S. Dist. LEXIS 43550 (S.D.N.Y March 26, 2013).

### A.     The Parties

At the time of the events subject to the arbitration, Petitioner-Respondent Leeward Construction Company, Ltd. ("Leeward" or "Petitioner") was a corporation organized and existing under the Commonwealth of Antigua and

3

Barbuda, with an office and principal place of business at All Saints Road, St. Johns, Antigua.  (A.  4, 128) [1]

Respondent-Appellant AUA is a corporation organized and existing under the laws of Antigua, with an office and principal place of business at Coolidge, Antigua.  (A. 179 ).  AUA was chartered by the Government of Antigua in 2004 to operate a medical school.  (*Id.*)  Its principal and only place of business is Antigua. (*Id.*)

## B.  The Arbitration

In 2008, discussions were initiated between representatives of AUA and Leeward concerning the construction of a new medical school campus for AUA in Antigua.  (A. 128).  A written agreement was entered into on September 25, 2008 between AUA and Leeward pursuant to which Leeward was retained to construct the Antigua campus.  (A. 128, 179-80) .  The Agreement contained the following arbitration clause:

> § 4.6.1 Any claim arising out of or related to the Contract . . . shall . . . be subject to arbitration.

> § 4.6.2 Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect.  The demand for arbitration shall be filed in writing with the other party to the Contract, and with the American Arbitration Association, and a copy

---

[1]    On information and belief Leeward's corporate registration has since lapsed and Leeward has ceased operations.

4

shall be filed with the Architect.  Location of any arbitration shall be Antigua.[2]

(A. 67)  The Agreement further provided that it was to be governed by Antiguan law of the place of performance, Antigua.  (A. 82) .

After completion of the project, on February 3, 2011, Leeward initiated an arbitration proceeding against AUA before the American Arbitration Association International Center for Dispute Resolution ("AAA") in accordance with its Construction Arbitration Rules.  (A. 180).  At the request of the Tribunal, the arbitration was conducted in Puerto Rico.  (*Id.*).  The Tribunal ruled at a September 8, 2011 hearing that the award in this Arbitration would be a reasoned award.  (A. 190)

Leeward's initial arbitration demand sought the recovery of approximately EC $13.1M/US $4,887,178 for various unspecified damages it claimed to have experienced under the contract.  (A.  180)[3]  In response to an application filed by AUA, Leeward was required to re-file its demand to specifically delineate its claim.  (*Id.*, A. 193)  In the amended demand, Leeward reduced its claim by half and sought the following relief:

---

[2]     Mediation was deleted by an amendment to the Construction Agreement.
[3]     The exchange rate of 2.7 Eastern Caribbean dollars per U.S. dollar is used throughout.

| | EC | US |
|---|---|---|
| Original Contract Amount Sum (BS 9) | EC $27,436,824.00 | US $10,162,599.61 |
| Deleted Work (Summary of Deleted Work, Annexed Hereto) | EC $1,948,755.32 | US $721,818.97 |
| Overhead and Profit (18%) on Deleted Work (Article 14.4.3 of General Conditions; Schedule of Claim) | EC $350,775.96 | US $129,927.42 |
| Revised Contract Sum | EC $25,838,844.64 | US $9,570,708.05 |
| Approved Extra Work — Paid (Revised Statement of Claim and BS 50-60) | EC $1,422,219.10 | US $526,789.95 |
| Approved Extra Work — Unpaid (Revised Statement of Claim and BS 52, 55, 56) | EC $181,847.52 | US $ 67,356.32 |
| Additional Work (Revised Statement of Claim and BS 258-282) | EC $1,361,628.64 | US $504,347.25 |
| Additional Preliminaries/General Conditions (BS 11, 283-286) | EC $1,985,711.68 | US $735,507.61 |
| Total | EC $30,790,251.58 | US $11,404,709.19 |
| Payments Received (BS 16) | EC $23,989,679.30 | US $8,885,777.21 |
| TOTALS: | EC $6,800,572.28 | US $2,518,931.97 |

(A. 181.)

Leeward claimed that is was entitled to be paid the original contract price of EC $27,436,824, regardless of whether it actually performed all of the work upon which that contract sum was based and regardless of whether it performed and was paid for such work under a separate contract , which would result in Leeward being paid twice for the same work. (A. 182). In addition to the entire contract price, Leeward also sought to recover various monies as damages, including EC $350,775.96 for the overhead and profits Leeward would have been paid for specific work that AUA removed from the contractor and gave to another

6

contractor. (*Id.*) . After discovery and submission of written direct testimony, oral hearings were held from March 5 through 9, 2012. (A. 127-28). After conclusion of the oral testimony, the parties submitted proposed findings of fact and conclusions of law. (A. 217 and 279.)

## C.    The Award

On June 22, 2012, the arbitrators issued an award (A.87), which was modified on August 8, 2012 (the "Award"). (A. 126). As a general matter, the arbitrators concluded that the Agreement was a fixed  price contract under which Leeward was entitled to compensation for work performed. (A. 132). They concluded that AUA had breached the Agreement by deleting certain Omitted Work, and that Leeward was entitled to $802,399.25 in overhead and lost profits for the Omitted Work. (A.  141-43, 157).

The Award contains two defects that are the subject of this appeal.

### 1.    Damages Under the "Bad Faith Doctrine"

The arbitrators awarded Leeward EC $232,670.13 in damages, under the "bad faith doctrine," for work that was initially under the Agreement but removed and rebid by AUA and performed by Leeward under separate contracts. (A.  ). The panel found that AUA had deleted from the scope of the original Agreement several types of work that it then put out for competitive bids.  Leeward submitted successful bids for flooring, door and window work, which it performed under

7

separate contracts. (A. 152). The arbitrators ruled that work performed under the competitive bid contracts did not arise under the Agreement and was not subject to arbitration. (A. 152). They also declined to award Leeward lost profits and overhead for that work under the Agreement. (A. 142).

Having ruled that work performed under the separate contracts was not within the scope of the arbitration, the panel then awarded Leeward damages of EC $232,670.13 "for work that was deleted from the Contract and then assigned to Leeward under Separate contracts under the "bad faith doctrine." (A. 94-95, 99). The arbitrators made this award on their own motion, even though Leeward never asked to be awarded additional damages under the "bad faith doctrine." (A. 183-84 ). Leeward did not make any claim for damages based on AUA's alleged "bad faith," and did not reference any "bad faith doctrine," much less any facts related to it. (*Id.*) As a result, neither party briefed the "bad faith doctrine." (*Id.*) Moreover, while the award was required to be a reasoned award, the arbitrators failed to state any legal or factual basis for their very precise calculation of the amount of these damages. (A. 94-95, 99 ).

## 2.    **Change Order Work**

Second, the Award also granted Leeward EC $190,201.19 (for various extra work that Leeward claimed it had performed but had not been paid, which the parties called "Change Order Work." (A. 157 ) As the sole support for this award,

8

the arbitrators state that "[f]rom the evidence presented at trial, the panel finds that Leeward is entitled to the additional EC $190,201.19." (A. 147-48) No other reasons are given for this award.

Under the limited grounds provided by the AAA rules, AUA filed a motion with the Tribunal seeking a modification and correction of the award with respect to the issues raised above and two others. (A. 356) The arbitrators denied AUA's motion without stating reasons. (A. 121-22).

**D.     The District Court's Decision**

Leeward petitioned to enforce the Award, and AUA cross-moved to modify it on the grounds stated in its post-hearing objections. (A. 170 ). The District Court rejected all four of AUA's objections.

With respect to bad faith damages, the District Court concluded that, although the question was a close one, the common law doctrine that every contract includes an implied covenant of good faith and fair dealing provided a 'barely colorable justification" for this aspect of the award (A. 20-24). With respect to change order work, the District Court rejected AUA's argument that the damage figure was not the result of a reasoned award, concluding that the entire award – not this one aspect – met the standard because it exceeded 30 pages. A reasoned award, it stated, did not oblige the arbitrators "to show how every single proposition they adopted could be derived from first principles." (A. 19).

9

## SUMMARY OF ARGUMENT

On appeal of a confirmed arbitration award, this Court reviews questions of law *de novo*. While judicial review of arbitration awards is deferential, the award may be set aside under 9 U.S.C. § 10(a)(3) to the extent that the arbitrators committed misconduct denying a party a fundamentally fair opportunity to present and defend its position. It may also be set aside under 9 U.S.C. § 10(a)(4) in those cases where the arbitrators have exceeded their powers, including, in this case, the failure to render a reasoned award.

The arbitration panel committed misconduct in on one issue by denying AUA the opportunity to present a defense. It awarded damages based on the "bad faith" doctrine, on its own motion and without prior notice, thereby denying AUA the opportunity to argue that the implied covenant of good faith and fair dealing does not exist at all in Antiguan law, which governs the Agreement. The arbitrators also exceeded their authority by awarding damages for "bad faith," and for Change Order Work, without stating any reasons for the amount. Under the Agreement, the panel was required to render a reasoned opinion. That is less elaborate than full findings of fact and conclusions of law, but it is more than the bare conclusion of an abbreviated award. A reasoned award requires some statement connecting the arbitrators' decision to the underlying facts, and there was none with respect to these two damage awards.

10

## ARGUMENT

## I.    THE STANDARD OF REVIEW

On appeal of an arbitration award, this Court reviews questions of law *de novo*. *Kolel Beth Yechiel Michil of Tartakov, Inc. v. YLL Irrevocable Trust*, 799 F.3d 99, 103 (2d Cir. 2013); *Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012).

Although this award involves a dispute between foreign corporations over a construction contract made and performed abroad, the award was rendered within the United States, specifically Puerto Rico. The grounds for modification or vacation of the award therefore include both those in the New York Convention and those in the Federal Arbitration Act, 9 U.S.C. § 10. *Scandinavian Reins. Co.*, 668 F.3d at 71.

AUA concedes, as it must, that this appeal bears a heavy burden. Judicial review of arbitration awards in general is highly deferential, in order to serve the goals of resolving disputes expeditiously and efficiently. *Stolt-Nielsen S.A. v. Animalfeeds Intl. Corp.*, 559 U.S. 662, 671-72 (2013) (challenge to award must clear "high hurdle"); *Scandinavinan*, *supra*. Nevertheless, under the FAA the arbitrators' discretion is not unlimited. Pursuant to 10 U.S.C. § 10(a)(3)[4], they

---

[4]    9 U.S.C. § 10(a) provides:

11

must proceed with enough regularity to allow the parties a fundamentally fair opportunity to present and defend their positions. *Tempo Shain Corp. v Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) (vacating award). Likewise, under 9 U.S.C. § 10(a)(4), the arbitrators are confined within the scope of the powers conferred by the arbitration agreement. That includes acting within the outer boundaries of the law that the parties explicitly agreed would govern the agreement – in this case the law of Antigua and Barbuda. *See generally Stolt-Nielsen S.A.,* 559 U.S. at 672-73; *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 389-90 (2d Cir. 2003) ("clearly applicable law").

---

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; **or of any other misbehavior by which the rights of any party have been prejudiced**; or

(4) **where the arbitrators exceeded their powers**, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. [emphasis added].

12

## II. THE ARBITRATORS COMMITTED MISCONDUCT BY AWARDING DAMAGES FOR "BAD FAITH" ON THEIR OWN MOTION WITHOUT GIVING AUA NOTICE OR OPPORTUNITY TO CONTEST THAT GROUND

The panel awarded damages to Leeward on its own motion based on AUA's supposed "bad faith" in removing work from the Agreement and then reallocating to Leeward under separate contracts. This ground was not raised either before the hearing or in Leeward's post-hearing submissions. By doing so, the panel deprived AUA of the opportunity to defend by arguing that bad faith damages were not available under Antiguan law and by demonstrating that it had acted in good faith to reassign the work.

The arbitrators ruled that work performed under the separate contracts was not within the scope of the arbitration and that Leeward was not entitled to overhead and profit on the deleted work. (A. 142, 152). Nevertheless, the panel concluded:

> Leeward is only entitled to payment for work performed. However, this Panel finds that Leeward is entitled to damages in the amount of EC $232,670.13 for work that was deleted from the Contract and then assigned to Leeward under separate contracts under the "bad faith doctrine." (A. 131-32).

The Award subsequently reiterates:

> After careful consideration of works that were deleted from the Contract and then assigned to Leeward under Separate Contracts, the Panel finds that Leeward is entitled to damages under the bad faith doctrine. Therefore, this Panel grants Leeward damages in an amount equal to EC$ 232,670.13. (A. 138).

13

The award is completely opaque as to what the arbitrators meant by the "bad faith doctrine." It also contradicts itself. Having ruled that Leeward was only entitled to payment "for work performed under the Agreement, it then awards damages, calculated on no known basis, for work performed under the Separate Contracts.

This award was a complete surprise. It is undisputed that Leeward had made no reference to any such theory in its papers and made no claim for damages from bad faith. It is also undisputed that the parties did not submit evidence on the issue of AUA's supposed bad faith. (A. 183-84). After receiving the Award, AUA objected – fruitlessly – on the ground that it was without notice of the issue and that neither party had briefed the issue post-hearing. (A. 357-58). At that point, for the first time, Leeward responded, with a bare citation to *Restatement (Second) Contracts* § 205, that every contract contains an implied covenant of good faith, and that the tribunal must have awarded damages for AUA's breach of the implied covenant. (A. 401 n.2) Although the Agreement is governed by Antiguan law (A. 82), there is nothing in the record to indicate that Antiguan law follows American law and implies a covenant of good faith.

The District Court gave decisive weight to Leeward's afterthought, holding that "under general principles of contract law" the covenant of good faith and fair dealing can be read into the Agreement, and that the Award gives Leeward

14

damages for the difference between what it would have earned on the flooring, door and window work under the Agreement, and what it actually earned for that work under the competitive contracts. (A. 22) Citing *T. Co. Metals, LLC v. Dempsey Pipe and Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010), it concluded that there was at least a "barely colorable justification" for this aspect of the Award, and that this was sufficient. (A. 23-24).

In so concluding, the District Court quoted this Court's decision in *T. Co. Metals* out of context. That case held that when an award is challenged on the non-statutory ground of "manifest disregard for the law," the arbitrators' reading of the law will be upheld if there is a "barely colorable justification for it." *T. Co. Metals, LLL, supra.* However, AUA is not raising the issue of manifest disregard. Instead, AUA contends that under 9 U.S.C. § 10(a)(3), the arbitrators committed misconduct that denied AUA fundamental fairness when they awarded damages on a legal theory that neither party had raised at any point, and to which AUA had no opportunity to respond.

This inability to respond prejudiced AUA. English common law, on which the law of Antigua is based,[5] does not imply a covenant of good faith into

---

[5]    *See* Official Website of the Government of Antigua and Barbuda: The Government System
http://www.ab.gov.ag/article_details.php?id=182&category=66 (last viewed February 12, 2015); Commonwealth Network ,

commercial contracts.  *See Medline Indus. v. Maersk Med.*, 230 F. Supp. 2d 857 , 864 (N.D. Ill. 2002)(collecting English authorities); *Sher v. JP Morgan Chase Funding Inc. (In re TMST, Inc.),* 2014 Bankr. LEXIS 4707 *11-*12 (Bankr. S.D.N.Y. 2014*); Basis Yield Alpha Fund (Master) v Goldman Sachs Group, Inc.*, 37 Misc. 3d 1212(A), 2014 N.Y. Misc. LEXIS 4960 (Sup. Ct. N.Y. Cty. Oct. 18 2012); *MBIA Ins. Co. v. Royal Bank of Canada*, 28 Misc. 3d 1225(A), 2010 N.Y. Misc. LEXIS 3958 (Sup. Ct. Westchester Cty. Aug. 19, 2010).  By invoking the "bad faith doctrine" without warning, the panel denied AUA the opportunity to argue that Antiguan contract law does not include the implied covenant of good faith.  It also denied AUA the chance to present testimony and argument that it had bid out the work in question in good faith for legitimate reasons, and that any implied covenant of good faith had not been breached.  Had AUA been given fair notice and allowed to litigate these issues, then AUA would have been in a position to defeat the "bad faith" damages claim before the panel and to argue, on judicial review that the arbitrators' decision showed manifest disregard for governing Antiguan law.    But the arbitrators' *sua sponte* decision denied AUA  "an adequate opportunity to present evidence and argument" on good faith in law and fact, and this denial renders the result "fundamentally unfair."  *Tempo Shain Corp.*, 120 F.3d at 20.

---

http://www.commonwealthofnations.org/sectors-antigua_and_barbuda/business/legal/ (Last viewed February 12, 2015).

## III. THE ARBITRATORS EXCEEDED THEIR POWERS BY FAILING TO PROVIDE A REASONED AWARD ON THE AMOUNT OF DAMAGES

The panel decided at the preliminary hearing that it would issue a "reasoned award. (A. 188-89). Failure to provide a reasoned award when the contract requires it exceeds the arbitrators' authority, per 9 U.S.C. § 10(a)(4), and requires that the award be vacated. *See Rain CII Carbon LLC v. Conoco Phillips Co.*, 674 F.3d 469, 473-74 (5th Cir. 2012); *Cat Charter LLC v. Sortenberger*, 646 F. 3d 836, 843 (11th Cir. 2012). While the AAA Rules provide for three general types of award – reasoned opinion, abbreviated opinion, or findings of fact and conclusions of law – they do not define what distinguishes a reasoned opinion from the other two types. Judicial definition of what constitutes a reasoned award is imperfect, and AUA is not aware of Second Circuit authority on the point.

Citing *Rain CII Carbon LLC*, 674 F.3d at 473, the District Court held that a reasoned award fell "something short of findings [of fact] and conclusions [of law] but more than a simple result." (A. 19). However, its examination of *Rain CII Carbon* was materially incomplete. In deciding whether the award at issue was reasoned, *Rain CII Carbon, LLC*, in turn relies on the 11th Circuit's discussion of the issue in *Cat Charter LLC*, , in which the 11th Circuit required that a reasoned award set out the process by which the arbitrators reached their conclusion:

> Determining whether an award is reasoned first requires some context. Generally, an arbitrator need not explain her decision; thus, in

17

a typical arbitration where no specific form of award is requested, arbitrators may provide a "standard award" and simply announce a result.  At the other end of the spectrum, the Arbitration Rules allow parties to request that the arbitrators make "findings of fact and conclusions of law," a relatively exacting standard familiar to the federal courts.

Logically, the varying forms of awards may be considered along a "spectrum of increasingly reasoned awards," with a "standard award" requiring the least explanation and "findings of fact and conclusions of law" requiring the most. Id. In this light, therefore, a reasoned award is something short of findings and conclusions but more than a simple result.

Our recognition of this spectrum, however, is still insufficient to fully evaluate  the Award as handed down by the Panel. We thus require further guidance regarding the key term. Webster's defines "reasoned" as "based on or marked by reasoning," and "provided with or marked by the detailed listing or mention of reasons." Relatedly, "reason"—as used in this context—is defined as "an expression or statement offered as an explanation of a belief or assertion or as a justification of an act or procedure. **Strictly speaking, then, a "reasoned" award is an award that is provided with or marked by the detailed listing or mention of expressions or statements offered as a justification of an act—the act here being, of course, the decision of the Panel.** [emphasis added; citations and quotation marks omitted.[6]

*Cat Charter LLC,* 646 F.3d at 844.

At one end of the spectrum, then, the abbreviated opinion is the equivalent of a jury verdict for damages – an opaque statement acceptable so long as the reviewing court can find it to be rationally related to the underlying evidence.  At the other end is findings of fact and conclusions of law in the form "familiar to the

---

[6]     It should be noted that the Fifth Circuit's quotation from *Cat Charter LLC* , on which the District Court relied, omits the Eleventh Circuit's citation of the Webster's definition of "reasoned" and "reason."  *Rain CII Carbon, LLC*, 674 F.3d at 473.

federal courts" under F. R. Civ. Proc. 52. *Cat Charter LLC*, *supra*. In between, as a reasoned award, lies something less than findings and conclusions, but containing enough detail that the panel's path to the decision can be traced and its justification known.[7]

Two awards of damages in this case fall short of the requirement of reasoning because there is no account of how the tribunal arrived at the particular figure it used. With respect to "bad faith" damages, the panel awarded the exact figure of EC$ 232,670.13. (A. 131-32, 138). There is no reference to the underlying evidence, or even to the theory on which this sum was arrived at. The figure does not appear in Leeward's amended demand for arbitration. (A.192). Because there is no explanation, it is impossible to determine whether the "bad faith" award partly duplicates the EC $802,399.25 in damages already awarded for Omitted Work, in which case it would provide Leeward a double recovery. Nor is it possible to determine whether the panel regarded it as punitive damages over and above compensation, which are not authorized under the Agreement.

The District Court speculated that "the award of damages [for bad faith] can be construed as restoring to Leeward the benefit of the original contract as to this work." (A. 23-24). Were this an abbreviated opinion, or analogously a jury

---

[7] *See also Redfern and Hunter on International Arbitration* (5th ed. § 9.125) (reasoned award requires more than statement that "the arbitral tribunal accepted the evidence of one party and rejected the evidence of the other . . . . ") (A. 176).

19

verdict, the District Court's analysis might pass muster. But the panel undertook to provide its own reasons, as the AAA rules required, and they provided none.

The same is true for the EC$ 802,399.25 awarded in lost profits and overhead for Omitted Work (A. 141-43) and the EC$190,201.19 awarded for Change Order Work. (A. 147-48). The award states no basis at all for the amount of lost profits on Omitted Work, and it contains only a conclusory reference to "the evidence presented at trial" for the Change Order work. As with the award for bad faith damages, these might conceivably pass muster as a jury verdict, but the panel's preliminary decision undertook to provide more. The "detailed listing or mention of expressions or statements offered as a justification of an act," *Cat Charter LLC, supra*, are fatally absent.

The District Court dealt with the lack of reasons for the specific amounts by stating that "the decision in this case was well over thirty pages long with considerable detail regarding the panel's findings and conclusions as to the various components of the overall award." (A. 19). In that, it erred. Unless other portions of the lengthy award contain reasons that can be cross-referenced to the specific amounts of damages, mere size and complexity does not provide the path that the arbitrators followed to arrive at specific amounts. That the award is reasoned in other instances should not obscure the fact that, on these points, the arbitrators provided only bare, unsupported conclusions.

20

## **CONCLUSION**

For the foregoing reasons, the decision of the District Court should be reversed, and the matter remanded with directions to modify the Award by vacating those elements on which AUA was denied the opportunity to defend and/or for which the arbitrators failed to render a reasoned award.

Dated:  February 13, 2015

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.
101 Park Avenue
New York, New York 10178
(212) 643-7000

By: _____

Attorneys for Appellant

21

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A)

1) This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,864 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2) This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-Point font.

SILLS CUMMIS & GROSS P.C.

By: _____
James M. Hirschhorn
101 Park Avenue, 29th Floor
New York, New York 10178
(212) 643-7000
jhirschhorn@sillscummis.com

*Attorneys for Respondent-Appellant*
*American University of Antigua-*
*College of Medicine*

Dated: February 13, 2015

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the Brief and Special Appendix of Respondent-Appellant American University of Antigua-College of Medicine with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the Appellate CM/ECF system on February 13, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

SILLS CUMMIS & GROSS P.C.

By: _____

James M. Hirschhorn
101 Park Avenue, 29th Floor
New York, New York 10178
(212) 643-7000
jhirschhorn@sillscummis.com

*Attorneys for Respondent-Appellant*
*American University of Antigua-*
*College of Medicine*

Dated: February 13, 2015

**SPECIAL APPENDIX**

SPECIAL APPENDIX

TABLE OF CONTENTS

Opinion, dated March 26, 2013 ............................................................................ SA1

Corrected Amended Judgment ........................................................................... SA15

9 U.S.C. § 10 ........................................................................................................ SA18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
LEEWARD CONSTRUCTION COMPANY,

Petitioner,

-against-                                          12 Civ. 6280 (LAK)

AMERICAN  UNIVERSITY  OF  ANTIGUA  –
COLLEGE  OF  MEDICINE,  and  MANIPAL
EDUCATION AMERICAS, LLC f/k/a GCLR, LLC.

Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<strong>MEMORANDUM OPINION</strong>

Appearances:

> Veronica A. McMillan
> J. Scott Greer
> Alana Bartley
> LEWIS & GREER, P.C.
> *Attorneys for Petitioner*

> Michael B. Goldsmith
> Katherine M. Lieb
> SILLS CUMMIS & GROSS P.C.
> *Attorneys for Respondents*

1

Lewis A. Kaplan, *District Judge.*

Petitioner Leeward Construction Company ("Leeward") seeks to confirm an international arbitration award against Respondents American University of Antigua ("AUA") and Manipal Education Americas ("Manipal").[1]

In September 2008, Leeward and AUA contracted for Leeward to construct a medical school for AUA in Antigua.[2]  Pursuant to an arbitration clause in the contract, Leeward commenced an arbitration proceeding against AUA before the American Arbitration Association in February 2011 regarding disputes that had arisen between them in the course of performance.[3]  The arbitrators held hearings in March 2012 in Puerto Rico and issued an award in favor of Leeward of approximately $1 million in June 2012, which was modified to correct clerical errors in August 2012.[4]  Leeward then petitioned to confirm the award against AUA and also against Manipal, the latter on a theory that Manipal was the *alter ego* of AUA.  Manipal was not a signatory to the underlying agreement, nor was it a party to the arbitration proceeding.

Respondents cross move to dismiss the petition or modify or vacate the award on a number of grounds.[5]  For the reasons stated, the petition is granted, but only insofar as Leeward

---

[1]    Leeward and AUA are both Antiguan corporations, while Manipal is a New York limited liability company.  *See* Am. Petition ¶¶ 4, 5; Scalafani Reply Decl. ¶ 4, Ex. A.

[2]    Scalafani Decl. Ex. H (hereinafter "Award") at 2.

[3]    *Id.* at 1.

[4]    *Id.* at 2; McMillan Decl., Ex. G at 2.

[5]    Respondents' motion was directed against Leeward's initial petition to confirm, rather than an amended petition that Leeward filed subsequently to add allegations regarding its claim against Manipal.  *Compare* DI 2 *with* DI 19.  The Court rejects respondents' contention that

2

seeks to confirm the award against AUA.  Manipal's cross motion to dismiss is granted, and AUA's

cross motion is denied.


I.      *Cross Motions to Dismiss*

As stated at oral argument, the Court grants the cross motion to dismiss the petition

against Manipal because "an action for confirmation is not the proper time for a District Court to

pierce the corporate veil."[6]  This dismissal is without prejudice to Leeward's filing a separate

plenary action against Manipal to enforce the judgment against AUA it obtains here under an *alter*

*ego* or other theory.[7]

As stated also at oral argument, the Court denies AUA's cross motion to dismiss the

petition on grounds of *forum non conveniens*.[8]

---

Leeward needed to file a new "request to confirm the Amended Petition" in light of the mooting of the initial petition. DI 22 at 2. The amended petition itself is the request; what is confirmed is not the petition but the award.  To the extent that the filing of the amended petition might have mooted respondents' motion, pursuant to respondents' alternative request, *id.*, the Court construes the motion as applying also to the amended petition.

[6]      *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.*, 312 F.2d 299, 301 (2d Cir. 1963) (internal quotation marks omitted).

[7]      *Id.* (noting that holding does not preclude petitioner from being separate action to enforce award against third party).

[8]      The Court briefly amplifies the reasons it set forth in open court for denying the motion on this ground.  Even as a foreign plaintiff, Leeward's choice of forum is entitled to some deference, particularly to the extent that it sues here for "legitimate reasons." *Bigio v. Coca-Cola*, 448 F.3d 176, 179 (2d Cir. 2006); *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (*en banc*) (setting forth "sliding scale" of deference).  The Court credits Leeward's contention that it chose this forum to expedite enforcement of the judgment against the assets it has reason to believe AUA possesses within the United States.  This is a legitimate reason to bring the petition here. *See Sonera Holding B.V. v. Curkova Holding. A.S.*, 2012 WL 3925853, *8 (S.D.N.Y. Sep. 10, 2012); *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 155 (2d Cir. 2005) (legitimate reasons are those based on

3

II.    *Cross Motion to Vacate or Modify the Award*

      AUA additionally contends that the award should be vacated or modified on a number of grounds.  In particular, AUA challenges four components of the arbitrators' award: (1) overhead and profit for "omitted work," (2) "change order work," (3) damages under the "bad faith doctrine," and (4) interest.

      The parties agree that, as an international arbitration occurring in Puerto Rico, the defenses to confirmation set forth both in the New York Convention and in the Federal Arbitration Act apply.[9]  In either case, review of the award is "severely limited."[10]  Indeed, when considering the merits of an arbitrators' decision, "the award should be enforced, despite a court's disagreement with it . . . , if there is a *barely colorable justification* for the outcome reached."[11]

---

questions of "genuine convenience").

Assuming *arguendo* that Antigua would have been an adequate alternative forum, the Court finds that the public and private interest factors do not support dismissal, let alone outweigh the deference owed to Leeward's choice.  As this action is a summary confirmation proceeding requiring no further evidence, there is no practical difficulty in resolving it here. *See Sonera Holding*, 2012 WL 3925853 at *9; *Constellation Energy Commodities Group, Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp.2d 211, 220 (S.D.N.Y. 2011); *Iragorri*, 274 F.3d at 74 (directing courts to consider practical conveniences regarding "precise issues that are likely to be actually tried").  Moreover, while generally there is a "local interest in having localized controversies decided at home," the Second Circuit has recognized that confirmation of international arbitration awards falling under the New York Convention is a "favored policy" of the United States—a public interest that weighs here heavily in favor of accepting jurisdiction. *Figueiredo Ferraz E Engharia de Projeta Ltda. v. Peru*, 665 F.3d 384, 389–90, 392 (2d Cir. 2011) (internal quotation marks omitted).

[9]    *See Scandinavian Reinsurance Co. Ltd. v. St. Paul Marine & Fire Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012); *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 21 (2d Cir. 1997); *see generally* 9 U.S.C. §§ 10, 11.

[10]    *Scandinavian Reinsurance Co.*, 668 F.3d at 71 (internal quotation marks omitted).

[11]    *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (emphasis in original; internal quotation marks omitted); *see also Schwartz v. Merrill Lynch*

4

For the reasons stated, AUA fails to meet its heavy burden to prevent confirmation of each challenged component of the award.

A.   *Overhead and Profit for Omitted Work*

In the arbitration proceeding, the central dispute was whether, in light of various reductions in the scope of the project from what Leeward and AUA initially contemplated, Leeward was entitled to be paid on the basis of the contract price or on the work actually performed. The arbitrators ruled that the contract between Leeward and AUA was a fixed-price contract subject to additions and deletions.[12] Although the contract envisioned that additions and deletions would occur through formal change orders and AUA never issued any such orders, the arbitrators concluded that Leeward was entitled to payment for only the work it performed on the ground that Leeward and AUA had waived the change order requirement.[13]

This said, the arbitrators generally accepted Leeward's claim that it was owed compensation for its overhead and profit on work that it did not perform, including both (1) "deleted work," which was work that AUA removed from the contract and submitted for general bidding, and (2) "omitted work," which was work that never was done at all due to design changes in the

---

& *Co., Inc.*, 665 F.3d 444, 452 (2d Cir. 2011) (describing standard for whether arbitrators engaged in "manifest disregard of law" sufficient to warrant vacatur as "first, whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable, and, second, whether the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it"); *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113, 122 n.1 (2d Cir. 2011) (vacatur requires more than mere legal error, but a showing "that the panel intentionally defied the law" (internal quotation marks omitted)).

12    Award at 6.

13    *Id.* at 6–7.

5

project.[14]

AUA challenges the arbitrators' grant of overhead and profit for omitted work.  It
contends that Leeward did not seek this overhead and profit until its post-hearing submissions and
that the arbitrators therefore exceeded their powers and engaged in prejudicial misconduct in making
that part of the award.[15]

As AUA itself concedes, Leeward sought payment for omitted work in its notice of
claim, which sought full payment for such work and not just recovery of its overhead and profit.
It was not outside of the arbitrators' power to award only a portion of what Leeward sought.
Moreover, AUA was able to defend against this particular alternative claim in its rebuttal post-
hearing submissions and argued there that the claim should not be considered because it was
untimely.  The arbitrators specifically rejected the latter contention, concluding that they "will not
exclude any claim under the sole contention of timeliness," apparently because "both parties
breached various provisions of the Contract and are, therefore, barred from enforcing said provisions
against each other."[16]  AUA does not even attempt to identify error in this conclusion in its
submissions.  The Court identifies no misbehavior by the arbitrators or other ground for vacatur in
the circumstances.

---

[14]

See *id.* at 31.

[15]

See 9 U.S.C. § 10 (permitting vacatur where arbitrators "exceeded their powers" or were
"guilty of . . . misbehavior by which the rights of any party have been prejudiced").

[16]

Award at 15–16.

6

*B.*    *Change Order Work*

AUA next challenges the arbitrators' award regarding change order work, i.e., work that Leeward completed but that was not part of the original contract.  AUA contends that the arbitrators' decision provided no reasoning as to why it accepted Leeward's contentions regarding this compensation, stating only that "[f]rom the evidence presented at trial, the Panel finds that Leeward is entitled [to such compensation]."  AUA contends that therefore the arbitrators exceeded their powers as they failed to provide the "reasoned award" required by the parties' contract.

Courts have read a "reasoned award" requirement as mandating that the arbitrators provide "something short of findings [of fact] and conclusions [of law] but more than a simple result."[17]  The decision in this case was well over thirty pages long with considerable detail regarding the panel's findings and conclusions as to the various components of the overall award. The parties had ample opportunity to contest Leeward's entitlement to compensation for change order work, and the summary nature of the discussion in the decision shows that the panel simply accepted Leeward's arguments on this particular point.  While the award may have been deficient if it summarily had indicated agreement with all of Leeward's contentions, that does not mean that the arbitrators were obliged to show how every single proposition they adopted could be derived from first principles.[18]

---

[17]
    *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 473 (5th Cir. 2012) (internal quotation marks omitted).

[18]
    To the extent AUA suggests that other aspects of the award were deficient also for failing to satisfy the "reasoned award" requirement, this same reasoning applies.

7

C.    *Damages Under "Bad Faith Doctrine"*

AUA contends also that the arbitrators' award for damages under the "bad faith doctrine" cannot stand.  While this presents a closer question, the challenge fails.


1.    *Background*

As discussed above, the original contract contemplated that Leeward would do a number of projects that AUA deleted from the scope of engagement and then put out for competitive bidding—namely, (1) flooring work, (2) door and window work, and (3) painting work.[19]  It appears that Leeward  submitted bids and was chosen to do the flooring work and the door and window work, which it completed under contracts separate from the principal contract.[20]   Apparently, however, Leeward did not do the painting work.[21]

Leeward sought in the arbitration both unpaid balances on its separate contracts with AUA and overhead and profit on all deleted work, including the flooring and door and window work that it had completed pursuant to the separate contracts.[22]  Leeward argued that the fact that it was able to complete work under a separate contract did not eliminate its entitlement to overhead and profit for that same work under the original contract, because among other things, Leeward had to

---

[19]

Scalafani Decl. Ex. E at 15.

[20]

*See* Award at 16, 18 (finding that door and window work and flooring work were given to Leeward under separate contracts).

[21]

*See id.* at 8, 26.

[22]

*See id.* at 13, 16, 25.

8

bid competitively for such work "with no guarantee of being awarded the work."[23]  As a

consequence, Leeward suggested that it might have had to bid "at a significantly lower rate [of

overhead and profit] to stay competitive."[24] It contended that "AUA removed these items of work

from the Contract in an effort to reduce the cost of the works through competitive bidding and to

avoid paying Leeward preliminaries for work performed after the substantial completion date."[25]


### 2.   *Award*

To the extent that Leeward sought payment of unpaid balances under the separate

contracts, the arbitrators ruled that those contracts were not subject to the arbitration clause and that

therefore the claims could not be considered.[26] They concluded also that, while as a general matter,

Leeward was entitled to overhead and profit for omitted and deleted work, they would not award

such overhead and profit for deleted work that had been awarded to Leeward under separate

contracts.[27]   The award did not appear to conclude that Leeward was not entitled to such

compensation, however.  Rather, it appeared to exempt this work from its overhead and profit award

"because such work was then given to Leeward under a Separate Contract *and, therefore, is not*

---

[23]     McMillan Decl. Ex. E at 26.

[24]     *Id.*

[25]     Scalafani Decl. Ex. E at 15.

[26]     Award at 5.

[27]     *Id.* at 8.

9

*subject to this Arbitration.*"[28] Nevertheless, the arbitrators went on to award damages for this work,

concluding that "Leeward is entitled to damages in the amount of EC $232,670.13 for work that was

deleted from the Contract and then assigned to Leeward under Separate Contracts, under the bad

faith doctrine."[29]

### 3.   Discussion

AUA objects to the arbitrators' reliance on a "bad faith doctrine," noting that no such

doctrine was invoked by Leeward throughout the arbitration proceedings.  It contends also that the

award appears to provide tort damages, above and beyond the contract damages to which Leeward

may have been entitled, that would not have been within the arbitrators' power to grant.  In response,

Leeward urges this Court to construe reference to the "bad faith doctrine" as a determination that

AUA breached the implied covenant of good faith and fair dealing.

Under general principles of contract law,[30] the implied covenant of good faith and

fair dealing requires "faithfulness to an agreed common purpose and consistency with the justified

---

[28]

    *Id.* at 25 (emphasis added).

[29]

    *Id.* at 8.  Describing the same award elsewhere in the decision, the arbitrators said, "After careful consideration regarding the works that were deleted from the Contract and then assigned to Leeward under Separate Contracts, this Panel finds that Leeward is entitled to damages under the bad faith doctrine." *Id.* at 12.

    "EC $" refers to Eastern Caribbean dollars and is the denomination of the award.  The petition indicates that at the time of the award, 2.700 Eastern Caribbean dollars equaled one United States dollar.  Am. Petition ¶ 3 n.1.

[30]

    No party has argued that Antiguan contract law deviates from these principles.

10

expectations of the other party."[31]   Examples of bad faith include "evasion of the spirit of the

bargain" and "abuse of a power to specify terms."[32]  Importantly, the implied covenant does *not*

provide some form of general damages awardable simply because a court determines that a party

acted in bad faith.[33]  Rather, it provides a basis for damages if the other party took actions in bad

faith that worked to deprive the plaintiff of the benefit of the bargain.

Recognizing that the arbitrators' reasoning regarding the deleted work awarded to

Leeward under separate contracts is questionable and leaves much to be desired, the Court concludes

that there is at least a "barely colorable justification" for the award rendered and that AUA's

challenge therefore fails.[34]  While Leeward had framed its claim as one for overhead and profit and

did not use the term bad faith, it essentially argued that AUA's actions with regard to this work

breached the implied covenant of good faith and fair dealing. That is, it argued that it was entitled

to the benefit of the margins it had negotiated for such work in the original contract and that AUA

had deprived it of this benefit when it deleted the work from the contract and then put the work up

for separate bidding.

In awarding damages under what they called the "bad faith doctrine," the arbitrators

apparently accepted Leeward's contentions that AUA had evaded the spirit of the bargain.  The

---

[31]

RESTATEMENT (SECOND) OF CONTRACTS, § 205.

[32]

*Id.*

[33]

*See Southeastern Penn. Transp. Auth. v. Bank of New York Mellon Corp.*, No. 12 Civ. 3066,
2013 WL 440628, *13 (S.D.N.Y. Jan. 23, 2013) ("The implied covenant protects the benefit
of the bargain made. It does not create new benefits out of whole cloth.").

[34]

*T.Co Metals, LLC*, 592 F.3d at 339 (emphasis, internal quotation marks omitted).

11

award of damages can be construed as restoring to Leeward the benefit of the original contract as to this work.  To be sure, the arbitrators might have achieved the same outcome by simply accepting Leeward's claim to overhead and profit for this work.  They appeared to conclude that they could not do so because the work had been part of separate contracts not subject to arbitration, even though it would seem that Leeward's claim for overhead and profit derived from the original contract, not the separate ones.  In any event, the damages award can be construed as amounting to the same thing, and this is a barely colorable justification for this award.  The conclusion finds further support in the rough proportionality between the bad faith damages award and what it appears Leeward was seeking for overhead and profit as to this work.[35]

While complaining generally about the issuance of "bad faith" damages, AUA's submissions before this Court do not even attempt to engage with the issue with which the arbitrators were clearly concerned: AUA's actions in deleting work from the original contract and then putting that work up for competitive bidding.  In the circumstances, AUA has not met its heavy burden to prevent confirmation of this portion of the award.

### D.    Interest Calculation

Finally, AUA challenges the arbitrators' award of EC $44,617.37 for interest.  Leeward had sought interest at a rate of 10 percent, which it calculated to be EC $63,739.12.  The arbitrators concluded that an interest award was appropriate, but only on a 7 percent rate, and awarded Leeward 70 percent of what it had sought.[36]

---

[35]     *See* Award at 7, 16–18.

[36]     *Id.* at 28–29.

12

The problem, AUA contends, is that Leeward's interest demand included interest for "mobilization" payments and that, in addressing whether Leeward would receive interest on such payments, the arbitrators stated that "the disputes regarding mobilization were resolved" by a separate settlement between the parties.[37]   AUA reads the decision as having concluded that no interest was warranted on mobilization payments, but then failing to exclude this interest from Leeward's claim before scaling the award by 70 pecent.  It asserts that the Court should modify the award by removing interest relating to mobilization because the calculation is an "evident material miscalculation of figures,"[38] which would reduce the interest awarded to EC $17,152.92.

Assuming *arguendo* that a miscalculation amounting to approximately $10,000 U.S. dollars on an approximately $1 million award is "material," the Court nevertheless rejects AUA's request.[39]   First, while the language of the decision strongly suggests that the arbitrators denied interest for mobilization, the decision did not expressly say so.[40]   Rather, what is clear is that the arbitrators decided to award EC $44,617.37 in interest, whatever that was meant to represent. Second, courts considering the "evident material miscalculation of figures" ground for modification

---

[37]
    *Id.* at 29.

[38]
    9 U.S.C. § 11(a).

[39]
    *Cf. South East Atlantic Shipping Ltd. v. Garnac Grain Corp.*, 356 F.2d 189, 192 (2d Cir. 1966) (concluding that certain discrepancies due to rounding error were not material, and that "[i]f such calculations were to be subject to judicial review, there would be few arbitration awards which would be immune from the very time and money consuming court reviews which arbitration is designed to avoid").

[40]
    *See* Award at 29 (finding, in response to question about whether Leeward was entitled to mobilization interest or whether this issue was previously settled, that "the disputes regarding mobilization were resolved with a payment by AUA in December 22, 2009 and a settlement was reached by the parties in January 13, 2009").

13

have limited it to "'mathematical error appearing *on the face of the award*,'"[41] such as when the arbitrators award various damages but then err in computation of the total amount. That is not this case; AUA must make assumptions about the arbitrators' calculation methodology to demonstrate error. While the assumptions AUA makes are quite reasonable, and it seems likely that there was a small error here, this does not mean that the error is evident on the face of the award permitting modification under 9 U.S.C. § 11.[42]

III.    *Conclusion*

For the reasons stated, (1) Leeward's amended petition to confirm the arbitration [DI 19] is granted, but only as against AUA; (2) Manipal's cross motion to dismiss as to itself [DI 9] is granted without prejudice to Leeward's filing a separate plenary action against it; and (3) AUA's cross motion to dismiss, modify, or vacate [DI 9] is denied. The Clerk shall close the case.

SO ORDERED.

Dated:       March  26,  2013

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

41

*Grain v. Trinity Health, Mercy Health Servs., Inc.*, 551 F.3d 374, 378 (6th Cir. 2008) (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir. 1998)) (emphasis added).

42

In fact, AUA presented the purported calculation error to the arbitrators in a letter after the initial decision. *See* Scalafani Decl., Ex. G at 2. While the arbitrators made some other clerical corrections after submission of the letter, they did not modify the award's interest calculation. This further augurs against presuming that any error was evident.

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED: 6/11/13              │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LEEWARD CONSTRUCTION COMPANY, LTD.,

                                    Petitioner,

                    -against-

AMERICAN UNIVERSITY OF ANTIGUA-
COLLEGE OF MEDICINE and MANIPAL
EDUCATION AMERICAS, LLC f/k/a GCLR, LLC,

                                    Respondents,
------------------------------------------------------------------x

**CORRECTED
AMENDED JUDGMENT**

12 CIVIL 6280 (LAK)

#15,1055

Petitioner Leeward Construction Company, Ltd. ("Leeward") having sought to confirm an international arbitration award against Respondents American University of Antigua (AUA") and Manipal Education Americas, LLC ("Manipal"), and the matter having been brought before the Honorable Lewis A. Kaplan, United States District Judge, and the Court, on March 26, 2013, having issued its Memorandum Opinion granting Leeward's amended petition to confirm the arbitration, but only as against AUA, granting Manipal's cross motion to dismiss as to itself without prejudice to Leeward's filing a separate plenary action against it, and denying AUA's cross motion to dismiss, modify, or vacate, it is

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Memorandum Opinion dated March 26, 2013, Leeward's amended petition to confirm the arbitration is GRANTED, but only as against AUA, and Leeward is awarded a judgment against the AUA as follows:

    a)     the sum of $16,524.95[1] with 7% interest thereon from the 31st day of October 2009 through June 11, 2013, totaling $20,763.14;

    b)     the sum of $86,174.12 with 7% interest thereon from the 22nd day of June 2012 thought June 11, 2013, totaling $92,105.77;

    c)     the sum of $297,184.91 with 7% interest thereon from the 31st day of October 2009 through June 11, 2013, totaling $373,404.58;

    d)     the sum of $176,954.46 with 7% interest thereon from the 31st day of October 2009 through June 11, 2013, totaling $222,338.36;

    e)     the sum of $70,448.22 with 7% interest thereon from the 31st day of October 2009 through June 11, 2013, totaling $88,516.23;

    f)     and the sum of $218,549.26 with 7% interest thereon from the 12th day of August 2012 through June 11, 2013, totaling $231,425.45; and

    g)     the total of the above referenced being $1,028,553.54;

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Memorandum Opinion, dated March 26, 2013, the AUA is awarded a judgment against Leeward in the sum of $58,500.00 with 7% interest thereon from the 22nd day of June, 2012, totaling $62,526.76 and deducting this amount from Leeward's judgment yields a judgment to Leeward in the amount of $966,026.79 and it is further

**ORDERED, ADJUDGED AND DECREED:** That Leeward is hereby awarded a judgment in the amount of $966,026.79 plus interest at a rate of 7% per annum until the judgment is paid.

---

[1] All dollar amounts in the Judgment have been converted from East Caribbean Dollars, as they were issued in the original arbitration award, at the current conversion rate of $1 U.S. Dollar to $2.700 East Caribbean Dollars.

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Memorandum Opinion dated March 26, 2013, Manipal's cross motion to dismiss as to itself is GRANTED without prejudice to Leeward's filing a separate plenary action against it; and it is further

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Memorandum Opinion dated March 26, 2013, AUA's cross motion to dismiss, modify, or vacate is DENIED; and accordingly, the case is closed.

Dated:   June ___, 2013
         New York, New York

                                        Enter,



**THIS DOCUMENT WAS ENTERED ON THE DOCKET ON _____**

3

9 U.S.C. § 10

§ 10. Same; vacation; grounds; rehearing

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--

  (1) where the award was procured by corruption, fraud, or undue means;

  (2) where there was evident partiality or corruption in the arbitrators, or either of them;

  (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

  (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(b) If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

(c) The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5.