# 13-1708-cv

# United States Court of Appeals

*for the*

# Second Circuit

LEEWARD CONSTRUCTION COMPANY, LTD.,

*Petitioner-Appellee,*

— v. —

AMERICAN UNIVERSITY OF ANTIGUA-COLLEGE OF MEDICINE,

*Respondent-Appellant,*

MANIPAL EDUCATION AMERICAS, LLC, FKA GCLR, LLC,

*Respondent.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**REPLY BRIEF OF RESPONDENT-APPELLANT
AMERICAN UNIVERSITY ANTIGUA COLLEGE OF MEDICINE**

JAMES M. HIRSCHHORN
SILLS CUMMIS & GROSS P.C.
*Attorneys for Respondent-Appellant*
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

## TABLE OF CONTENTS

                                                            **Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT .................................................................................................................2

I.     THE ARBITRATORS COMMITTED MISCONDUCT BY AWARDING DAMAGES FOR BAD FAITH WITHOUT GIVING AUA ANY OPPORTUNITY TO DEMONSTRATE THAT GOVERNING ANTIGUA LAW DOES NOT IMPLY A COVENANT OF GOOD FAITH IN COMMERCIAL CONTRACTS ........2

        A.    English and Antiguan Law Does Not Imply A Covenant Of Good Faith In Commercial Contracts .................................................2

        B.    AUA Was Deprived Of The Opportunity To Demonstrate That The Agreement Did Not Contain Any Implied Covenant Of Good Faith .................................................................................................6

II.    THE ARBITRATORS EXCEEDED THEIR POWERS BY FAILING TO PROVIDE FOR A REASONED AWARD ...........................................8

CONCLUSION ..............................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Cat Charter LLC v. Sortenberger*,
    646 F.3d 836 (11th Cir. 2012) ................................................................. 1, 2, 8, 9

*Rosati v. Bekhor*,
    167 F. Supp. 2d 1340 (M.D. Fla. 2001) ................................................................ 7

*Sarofim v. Trust Co. of the West*,
    440 F.3d 213 (5th Cir. 2006) ................................................................................ 8

*Tempo Shain Corp. v. Bertek, Inc.*,
    120 F.3d 16 (2d Cir. 1997) ................................................................................... 6

*Vandenavond v. i2 Techs., Inc.*,
    2008 U.S. Dist. LEXIS 103586 (N.D. Tex. Dec. 19, 2008) ................................. 7

*Wash. Land Dev. v. Lloyds TSB Bank, PLC*,
    2014 U.S. Dist. LEXIS 98121 (W.D. Wa. Jul. 18, 2014) .................................... 5

*Willcox v. Lloyds TSB Bank, PLC,*
    2014 U.S. Dist. LEXIS 176706 (D. Haw. Jun. 10, 2014) .................................... 5

**RULES**

Rule 10b-5 ................................................................................................................. 7

**OTHER AUTHORITIES**

*Mid-Essex Hospital Services NHS Trust v. Compass Group UK and Ireland
    Ltd.*, [2013] EWCA Civ 200 ......................................................................... 4, 5, 6

*Nash v. Paragon Finance PLC*, [2001] EWCA Civ 1466 ........................................ 5

Restatement, Contracts 2d § 205 .............................................................................. 7

*Yam Seng Pte., Ltd. v. Int'l. Trade Corp. Ltd.*,
    [2013] EWHC 111 (QB) ............................................................................ 2, 3, 4, 5

## **PRELIMINARY STATEMENT**

In its initial Brief, American University of Antigua ("AUA") has demonstrated that the arbitration Panel committed misconduct by awarding Leeward Construction Co., Ltd. ("Leeward") damages under the "bad faith" doctrine on its own motion, without warning, and without giving AUA a fair opportunity to demonstrate that governing Antiguan law does not imply a covenant of good faith and fair dealing into commercial contracts. In response, Leeward argues that English law, which Antigua follows, had adopted the same implied covenant of good faith as American contract law. Leeward's argument rests on a single 2013 trial court decision, which was decided on narrow grounds not amounting to a general implied obligation of good faith, and which has been disapproved by the English Court of Appeal. Because the governing law does not include the "bad faith" doctrine on which the Panel relied, their spontaneous decision is outside the scope of the Agreement, and AUA could not have anticipated that they would apply it without warning.

AUA also demonstrated in its initial Brief that the Panel had failed to render a reasoned opinion with respect to the amount of three categories of damages it awarded, including "bad faith" damages, instead simply stating amounts with no discussion or connection to the arbitration record. Leeward's response simply ignores *Cat Charter LLC v. Sortenberger*, 646 F.3d 836 (11th Cir. 2012), the most

1

comprehensive explanation of what a reasoned arbitration award must contain. It does not try to find reasons for the amount awarded in the Panel opinion, or to connect those amounts to evidence in the arbitration record. Instead, Leeward argues, as did the District Court, that because the 30 page panel opinion was reasoned as a whole, it must be considered reasoned with respect to the amount of damages. This argument ignores the requirement of *Cat Charter* that a reasoned opinion, though not as elaborate as full findings of fact and conclusions of law, must show the path by which the arbitrator got from the evidence to the result. Because the Panel failed to do so for these three damage awards, they must be vacated.

## ARGUMENT

I. **THE ARBITRATORS COMMITTED MISCONDUCT BY AWARDING DAMAGES FOR BAD FAITH WITHOUT GIVING AUA ANY OPPORTUNITY TO DEMONSTRATE THAT GOVERNING ANTIGUA LAW DOES NOT IMPLY A COVENANT OF GOOD FAITH IN COMMERCIAL CONTRACTS**

   A. **English and Antiguan Law Does Not Imply A Covenant Of Good Faith In Commercial Contracts**

Antigua law governs the Agreement between Leeward and AUA. (A. 82). Leeward concedes by silence that Antigua's law follows England's. (*See* AUA Br. at 15). Leeward argues, based on the trial court decision in *Yam Seng Pte., Ltd. v. Int'l. Trade Corp. Ltd.*, [2013] EWHC 111 (QB), that English law does include a general implied covenant of good faith equivalent to the one in American contract

2

law.  Leeward's argument exaggerates the holding of *Yam Seng* and disregards crucial parts of the opinion.  It also disregards the fact that *Yam Seng* has not been accepted by the English appellate courts.

*Yam Seng* involved a long term distribution contract.  The opinion concedes that "the general view among commentators appears to be that in English contract law there is no legal principle of good faith of general application," *Yam Seng Pte. Ltd.* at ¶ 121.  The opinion goes on to argue that there ought to be a principle of good faith in commercial contracts that includes "honesty in performance," *id.* at ¶¶ 135-37 and "fidelity to the parties' bargain." *Id.* at ¶ 139, in those contracts that "involve a longer term relationship between the parties which [sic] they make a substantial commitment." *Id.* at ¶ 142.  The scope of this obligation is "sensitive to context." *Id.* at ¶ 141.  In the case before it, the trial court held that the obligation of good faith consisted of the seller's duty not to provide knowingly false information to the local distributor, *id.* at ¶¶ 155-56, and an obligation not to undercut the distributor by selling to others at a price lower than the distributor was required to sell at. *Id.* at ¶¶ 157-64.  These obligations were implied from the specific terms of the contractual relationship, rather than any general duty of good faith. *Id*.

The discussion of an obligation not to undercut prices was pure dictum, as the trial court found that the seller did not, in fact, undercut its distributor's prices.

3

*Yam Seng Pte., Ltd.* at ¶¶ 165-68. The only breach of implied obligations that the trial court found was that, akin to fraud, the seller knowingly gave its distributor material false information in the course of performance, which justified the distributor in terminating the agreement. *Id.* at ¶¶ 169-71, 173-74. In sum, after a great deal of interesting but extraneous rumination, the trial court concluded that one party to a long term contract had a duty not to lie to the other during the course of performance. This is a far cry from the American-style general duty of good faith that Leeward invokes to justify the Award.

Furthermore, *Yam Seng* has not been adopted by the higher English courts. In *Mid-Essex Hospital Services NHS Trust v. Compass Group UK and Ireland Ltd.*, [2013] EWCA Civ 200 at ¶¶ 104-105, the Court of Appeal cited *Yam Seng* only for the proposition that English law does not recognize an implied duty of good faith and repudiated the trial court's other conclusions:

> 104. [Counsel] also points out that this is a very detailed contract, where the obligations of the parties and the consequences of any failings have been spelled out in great detail. Commercial common sense therefore does not favor a general overarching duty to cooperate in good faith.
>
> 105. In addressing this question, I start by reminding myself that there is no general doctrine of "good faith" in English contract law, although a duty of good faith is implied by law as an incident of certain categories of contract: see . . . *Yam Seng Pte Ltd v. International Trade Corporation Ltd* [2013] EWCH 111 (QB) at

4

paragraphs 120-31.  **If the parties wish to impose such a duty they must do so expressly**.  [Emphasis added].[1]

One of the two concurring opinions noted that the contract at issue had numerous specific provisions covering the dispute and cautioned, "in a situation where a contract makes such specific provision, in my judgment care must be taken not to construe a general and potentially open-ended obligation such as an obligation to "co-operate" or "to act in good faith" as covering the same ground as other, more specific provisions, lest it cut across those more specific provisions and any limitations in them." *Id.* at ¶ 154.  The same is true of the extensive and detailed construction contract between Leeward and AUA.

Finally, the two American courts to have considered *Yam Seng*'s impact on English law have held that it does not create a general duty of good faith, but rather requires that discretion expressly conferred by a contract be exercised in a commercially reasonable manner.  *See Willcox v. Lloyds TSB Bank, PLC,* 2014 U.S. Dist. LEXIS 176706 * 35 (D. Haw. Jun. 10, 2014) (lender's discretion to set floating interest rate); *Wash. Land Dev. v. Lloyds TSB Bank*, *PLC*, 2014 U.S. Dist. LEXIS 98121 *11-*12 (W.D. Wa. Jul. 18, 2014) (same; Hong Kong law).[2]

---

[1] A copy of the opinion in *Mid Essex Hospital Services NHS Trust* is attached to this brief for the Court's convenience.

[2] Like these cases, *Nash v. Paragon Finance PLC*, [2001] EWCA Civ 1466, ¶¶ 30-42 also cited by Leeward, involved the lender's discretion to set rates on a variable rate loan.

5

Based on the authorities cited in AUA's Brief at 15-16, supplemented by *Mid Essex Hospital Services NHS Trust*, English law does not recognize an American-style implied covenant of good faith and fair dealing in commercial contracts, but at most a more limited obligation not to misrepresent and to exercise discretion in a commercially reasonable manner.

### B. AUA Was Deprived Of The Opportunity To Demonstrate That The Agreement Did Not Contain Any Implied Covenant Of Good Faith

Whether Antiguan law provides the implied covenant of good faith on which the Panel and Leeward rely is not an issue that this Court should be deciding as a matter of first instance. AUA was entitled to raise these arguments to the Panel, and it was denied the opportunity to do so because the Panel, on its own motion, raised the issue of good faith without warning in its decision after briefing was complete. By relying without prior notice on a doctrine in American law that is not within the English common law applied in Antigua, the Panel committed misconduct by depriving AUA of a fair opportunity to present and defend its position. *See Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997).

Leeward argues that there has been no denial of fundamental fairness because the "general issue" before the Panel, breach of contract, includes a breach

6

of the implied covenant of good faith. (Leeward Br. at 15).³ That argument, of course, begs the question of whether a contract governed by Antiguan law includes such an implied covenant. AUA was deprived of any opportunity to demonstrate that it does not.

*Rosati v. Bekhor*, 167 F. Supp. 2d 1340 (M.D. Fla. 2001), on which Leeward relies for its "general issue" argument, provides no support. *Rosati* involved a securities fraud claim under Rule 10b-5 arising out of a Florida transaction. Though the arbitration pleadings had not mentioned the Florida state securities statutes, there was no doubt that they were part of the law governing the transaction, and the district court concluded that "stating a cause of action under the Florida Securities Investors Protection Act or Florida common-law fraud is virtually identical to stating a claim under Rule 10b-5," and that an award based on Florida's securities law was therefore not arbitrary or capricious. *Rosati.*, 167 F. Supp. 2d at 1345-46. Likewise, *Vandenavond v. i2 Techs., Inc.,* 2008 U.S. Dist. LEXIS 103586 at *10-*11 (N.D. Tex. Dec. 19, 2008) held that the arbitrator had not exceeded his authority by relying on a contract provision not cited by the parties. Here, in contrast, the governing law provided in the contract, that of Antigua, does not include the "good faith doctrine" on which the Arbitrators relied.

---

³    Citing Restatement, Contracts 2d § 205, Leeward asserts that "every contract carries with it a duty that the parties exercise good faith." (Leeward Br. at 15 n. 2). As the Restatement is a compilation of American common law, that sentence should read that "every *American* contract" carries this duty.

7

The parties submitted claims of breach of contract to be decided under Antigua law, and AUA was deprived of any opportunity to demonstrate that Antigua law does not imply a covenant of good faith into the contract.

## II. THE ARBITRATORS EXCEEDED THEIR POWERS BY FAILING TO PROVIDE FOR A REASONED AWARD

As a preliminary point, Leeward argues that the Panel was not required by the Agreement to render a reasoned award . (Leeward Br. at 20). However, the Panel made a preliminary ruling that it would render a reasoned award. (A. 190). Leeward did not object and is bound by that ruling. *Cat Charter LLC v. Sortenberger*, 646 F.3d 836, 840 n.6 (11th Cir. 2012), on which Leeward relies, points out that the AAA Commercial Arbitration Rules allow the arbitrator to determine that a reasoned award is appropriate. The Panel did so here.

As to the substance of a reasoned award, Leeward argues that anything "short of findings of fact and conclusions of law but more than a simple result" will pass muster. (Leeward Br. at 20). The Fifth Circuit opinion on which it primarily relies, *Sarofim v. Trust Co. of the West*, 440 F.3d 213, 215 n.1 (5th Cir. 2006), is itself in the nature of a "simple result." On the level of detail needed for a reasoned award, the *Sarofim* footnote simply quotes a district court decision, without discussion or analysis.

Leeward simply ignores the Eleventh Circuit's extensive analysis of what a reasoned award must contain in *Cat Charter LLC*, 646 F.3d at 844. As the

8

Eleventh Circuit pointed out, a reasoned award must contain "detailed listing or mention of expressions or statements offered as a justification of an act – the act here being, of course, the decision of the panel." *Id*. The award in *Rain CII Carbon, LLC*, 674 F.3d 469 (5th Cir. 2006), on which Leeward also relies, satisfied that standard. As the Fifth Circuit pointed out, the arbitrator's decision had "thoroughly delineated" his reasoning on the disputed issue. *Id.* at 474.

In contrast, the Award in this case does not delineate the Panel's reasoning on the amount of damages for breach of the implied covenant of good faith or for lost profits on Omitted Work and Change Order work. (AUA Br. at 19-20). Conspicuously, Leeward makes no effort to tie the Panel's decision on the very exact amounts awarded to any evidence in the arbitration record. Instead, like the District Court below, it asserts that the Award as a whole was reasoned because it was 30 pages long. (Leeward Br. at 21). That argument is specious. Reasoning does not depend on bulk, but on the Panel's connection of its decision to the underlying record. *Cat Charter LLC*, *supra*. The Award satisfied that standard on many other issues, but its decision awarding damages on these three was nothing more than the Panel's *ipse dixit* as to the amount.

9

## **CONCLUSION**

For the foregoing reasons, and those stated in AUA's initial Brief, the decision of the District Court should be reversed, and the matter remanded with directions to modify the Award by vacating those elements on which AUA was denied the opportunity to defend and/or for which the arbitrators failed to render a reasoned award.

Dated: March 30, 2015                                        SILLS CUMMIS & GROSS P.C.

                                                          By:   /s/ James M. Hirschhorn
                                                         James M. Hirschhorn
                                                         101 Park Avenue, 29th Floor
                                                         New York, New York 10178
                                                         (212) 643-7000
                                                         jhirschhorn@sillscummis.com

                                                         Attorneys for Respondent-Appellant
                                                         American University of Antigua-
                                                         College of Medicine

# **CERTIFICATE OF COMPLIANCE**

1) This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2,608 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2) This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-Point font.

SILLS CUMMIS & GROSS P.C.

By: /s/ James M. Hirschhorn
James M. Hirschhorn
101 Park Avenue, 29th Floor
New York, New York 10178
(212) 643-7000
jhirschhorn@sillscummis.com

Attorneys for Respondent-Appellant
American University of Antigua-
College of Medicine

Dated: March 30, 2015

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Reply Brief for Respondent-Appellant American University of Antigua-College of Medicine with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the Appellate CM/ECF system on March 30, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Appellate CM/ECF system.

        SILLS CUMMIS & GROSS P.C.

        By:   /s/ James M. Hirschhorn
            James M. Hirschhorn
            101 Park Avenue, 29th Floor
            New York, New York 10178
            (212) 643-7000
            jhirschhorn@sillscummis.com

        Attorneys for Respondent-Appellant
        American University of Antigua-
        College of Medicine

Dated: March 30, 2015